**CADIGAN LAW FIRM, PLLC**
504 S. Stone Avenue
Tucson, AZ 85701
Telephone: (520) 622-6066
Facsimile: (520) 882-4373
Lynne M. Cadigan, SBN 009044
lmcadigan@gmail.com
*Attorney for Plaintiffs*

**BURG SIMPSON**
**ELDREDGE HERSH & JARDINE, P.C.**
2390 E. Camelback Road, Suite 403
Phoenix, AZ 85016
Telephone: (602) 777-7000
Facsimile: (602) 777-7008
J. Tyrrell Taber, SBN 005204
ttaber@burgsimpson.com
Christopher Post, SBN 028330
cpost@burgsimpson.com
*Attorneys for Plaintiffs*

### IN THE UNITED STATES DISTRICT COURT

### IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alec Campbell, *et al.*, | Case No.   21-cv-00002-TUC-SHR |
| Plaintiffs, | |
| vs. | **FIRST AMENDED COMPLAINT** |
| State of Arizona, *et al.*, | |
| Defendants. | |

Plaintiffs Alec Campbell, Mahliya Campbell, and Fleming & Curti, PLC, in its capacity as conservator for John Doe No. 1, a minor, and John Doe No. 2, a minor (collectively "Plaintiffs"), for their First Amended Complaint against Defendants, allege:

**PARTIES, JURISDICTION, AND VENUE**

1. At all times relevant, Plaintiffs were residents of Cochise County, Arizona.

2. At all times relevant, Plaintiffs were fostered and then adopted by Defendants Brian and Monica Campbell, husband and wife, and all acts and omissions complained of herein were done on behalf of and in furtherance of their marital community.

3. The State of Arizona has obligations, including but not limited to, ensuring that the children of Arizona are safe and protected from harm.

4. The State seeks to fulfill its obligations to the children of Arizona through a number of State agencies and departments, including at relevant times:  Department of Child Safety ("DCS"), Department of Economic Security ("DES"), Child Protective Services ("CPS"), and Division of Children, Youth and Families ("DCYF") (collectively the "State" or "DCS").

5. All of the agencies and departments named in paragraph 4 are non-jural entities, and the State is legally responsible for their acts and omissions and the acts and omissions of its employees, agents, partners, principals, servants, contractors, joint venturers, and/or representatives.  At all times relevant, the State ratified all acts and omissions complained of herein.

6. At all times relevant, Defendant Brian Campbell was an employee, agent, partner, principal, servant, contractor, joint venturer, and/or representative of the State and performed the acts and omissions alleged herein in his individual capacity and on behalf of and in furtherance of his marital community.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

7.     Cochise County, Arizona, through the Cochise County Sheriff's Office ("CCSO") (collectively the "County"), has obligations, including but not limited to, providing "professional, high quality and effective law enforcement and correctional services in partnership within the community" and being "committed to the protection of life and property; the preservation of peace, order, and safety; the vigorous enforcement of Local and State Laws; and the defense of the Constitution of the State of Arizona and the United States of America in a fair and impartial manner," as purported on the CCSO's website as of 02/23/21.  *See* Exhibit 1, CCSO's website.

8.     At all times relevant, the CCSO was a non-jural entity.  The County is legally responsible for its acts and omissions and the acts and omissions of its employees, agents, partners, principals, servants, contractors, joint venturers, and/or representatives. At all times relevant, the County ratified all acts and omissions complained of herein.

9.     At all times relevant, Defendant Monica Campbell was an employee, agent, partner, principal, servant, contractor, joint venturer, and/or representative of the County and performed the acts and omissions alleged herein in her individual capacity and on behalf of and in furtherance of her marital community.

10.     At all times relevant, Defendant Mark J. Dannels was an employee, agent, partner, principal, servant, contractor, joint venturer, and/or representative of the County and performed the acts and omissions alleged herein in his individual capacity and/or his official capacity as Sheriff and County Officer of Cochise County, Arizona, on behalf of and in furtherance of his marital community.  At all times relevant, Sheriff Dannels was a peace officer as defined by A.R.S. § 41-1701.

11.    At all times relevant, Defendant Nickola M. Dannels was the wife of Sheriff Mark J. Dannels, and all acts and omissions complained of herein were done on behalf of and in furtherance of their marital community.

12.    At all times relevant, Defendant Sgt. Louie Tartaglia was an employee, agent, partner, principal, servant, contractor, joint venturer, and/or representative of the County and performed the acts and omissions alleged herein in his individual capacity and/or his official capacity as Sergeant of the CCSO, on behalf of and in furtherance of his marital community.    At all times relevant, Sgt. Tartaglia was a peace officer as defined by A.R.S. § 41-1701.

13.    At all times relevant, Defendant Virginia Tartaglia was the wife of Sgt. Louie Tartaglia, and all acts and omissions complained of herein were done on behalf of and in furtherance of their marital community.    Upon information and belief and at all times relevant, Virginia Tartaglia worked alongside Monica Campbell in the CCSO's dispatch department.

14.    The State, County, and individually named Defendants are legally responsible for the intentional, reckless, negligent, and grossly negligent acts, omissions, and resultant damages described herein.

15.    Plaintiffs assert their claims against Defendants for violations of Plaintiffs' constitutional rights, which are incorporated upon the State of Arizona through the Fourteenth Amendment.

.   .   .

.   .   .

4

16.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(3) (civil rights). This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear Plaintiffs' state law claims as set forth below.

17.    With regard to the state law claims set forth below, Plaintiffs have complied with the provisions of A.R.S. § 12-821.01 by timely filing a notice of claim against the above-named Defendants.

18.    All Defendants failed to respond to Plaintiffs' notice of claim and more than 60 days have passed since they were served with Plaintiffs' notice of claim. Therefore, Plaintiffs' notice of claim is deemed denied.

19.    Because Defendants' actions, inactions, and failures to comply with the Civil Rights Act, 42 U.S.C. § 1983, all occurred or failed to occur in Cochise County, Arizona, venue in the Tucson Division of the District of Arizona is appropriate pursuant to 28 U.S.C. § 1391(b).

20.    As discovery has not yet commenced, this Complaint may need to be amended in the future to add additional facts, details, parties, and/or claims.

**GENERAL ALLEGATIONS**

21.    Between 2006 and 2008, Plaintiffs were placed in the home of Defendants Brian and Monica Campbell through the State's foster care program. On or about 2008, Plaintiffs were adopted by Brian and Monica Campbell. Upon information and belief and at all times relevant, Brian and Monica Campbell fostered and subsequently adopted Plaintiffs specifically in order to fraudulently obtain supplemental monthly payments in

the amount of approximately $700.00 for each child, and for what they falsely claimed was needed to address each child's alleged behavioral and emotional issues.

22.    On or about 08/01/15, Defendant Brian Campbell was hired by the State as a DCS Child Safety Specialist, despite having been recently terminated from a six-month stint in the Cochise County Juvenile Probation department.  At all times relevant, DCS was aware that Brian Campbell had been fired by the County, yet hired him anyway, as it was the State's pattern, policy, and practice to hire "friends," regardless of their qualifications.

23.    Between August 2015 and September 2018, Brian Campbell worked as a DCS Child Safety Specialist, charged with assessing child safety and risk for the most vulnerable children in Arizona, including investigating and reporting any and all allegations of suspected child abuse, neglect, and/or maltreatment.

24.    On or about 04/20/09, Defendant Monica Campbell was hired as a Dispatch Supervisor for the CCSO and was responsible for receiving, supervising, and responding to 911 calls.

25.    Defendant Mark J. Dannels was elected as the Cochise County Sheriff in 2012 and won a reelection bid in 2016.  He currently holds office in this capacity.  Before being elected County Sheriff, he "progressed through the ranks" of the CCSO to the position of Deputy Commander.  *See* Exhibit 2, Sheriff Mark J. Dannels Biography. Through these publicly held positions, Sheriff Dannels was responsible for, amongst other things, investigating reports of child abuse, neglect, and/or maltreatment and referring such crimes to the County Attorney's Office for prosecution.

26.    From at least 2015 through 2018, Defendant Louie Tartaglia was a Sergeant with the CCSO and was responsible for, amongst other things, investigating reports of child abuse, neglect, and/or maltreatment, and referring such crimes to the County Attorney's Office for prosecution.

27.    Since the time Plaintiffs were each respectively placed in the home of Defendants Brian and Monica Campbell as foster children and subsequently adopted, the Campbells systematically physically, sexually, emotionally, and psychologically abused and tortured Plaintiffs.  At all times relevant, Brian Campbell was acting in his individual capacity under color of law through his position as a DCS Child Safety Specialist.  Similarly, and at all times relevant, Monica Campbell was acting in her individual capacity under color of law through her position as the CCSO Dispatch Supervisor.

28.    Such acts included, but are not limited to, sexual abuse, child abuse, domestic assault, assault and battery, aggravated assault and battery, defamation, public humiliation, intimidation, depriving Plaintiffs of food and water, threatening to kill Plaintiffs, prohibiting Plaintiffs from bathing or showering for long periods of time, and conspiring with DCS and the CCSO to cover up their actions by failing to report and investigate the abuse in violation of A.R.S. § 13-3620.  With respect to Plaintiff Mahliya Campbell ("Mahliya") in particular, such abuse caused her incapacitating duress, leaving her unable to report or vocalize the agony she endured—and still endures to this day—because of her fear of retribution, especially from Monica Campbell.  On several occasions and while living in the Campbell home, Monica Campbell threatened to kill Mahliya.  Even after Mahliya moved out of the home, Monica Campbell continued to

threaten and stalk her, and such intimidation continued until Monica Campbell was sentenced to prison on 01/22/21, for the offenses complained of herein.  *See* <u>Exhibit 3</u>, Monica Campbell Plea Agreement.

29.     Plaintiffs Mahliya and Alec Campbell reached the age of majority in early 2018 and early 2019, respectively.  Notwithstanding, and in view of the allegations raised in this First Amended Complaint, Plaintiffs affirmatively allege that such duress as a result of the acts of child abuse alleged herein affects the tolling of the applicable statutes of limitation in Arizona with respect to the state claims brought by Plaintiffs in this action.  Such acts and threats described herein precluded and continue to preclude the exercise of Plaintiffs' free will and judgment, and such paramount authority prevented them, and continues to prevent them, from exercising their legal rights, including but not limited to, the filing of Plaintiffs' notice of claim pursuant to A.R.S. § 12-821.01, service of which was effectuated in late 2020, and the filing of the instant action.  *See, e.g., Jane Doe One v. Garcia*, 5 F.Supp.2d 767 (D. Ariz. May 7, 1998).

30.     In the alternative, Plaintiffs affirmatively allege that A.R.S. § 12-511(A) is applicable in that this action was brought within one year from the final disposition of the related criminal proceedings of Defendants Brian and Monica Campbell on 01/22/21.  *See* <u>Exhibit 3</u> and <u>Exhibit 4</u>, Monica Campbell Plea Agreement and Brian Campbell Plea Agreement.

31.     Specifically, such acts of physical, sexual, emotional, and psychological abuse that occurred during the entire time Plaintiffs resided in the Campbell home include, but are not limited to:

- Being forced to regularly stand naked between the kitchen and dining room as a form of "discipline" where they would be hit with a wooden stick or board, leaving bruises on their buttocks.

- Withholding of food for up to three days and then being called "thieves" for eating food from their own kitchen.

- Prohibiting Plaintiffs from using the restroom and instead forcing them to urinate and defecate in cat litter boxes located in their bedrooms.

- Being stripped naked and forced to sleep in their parents' bedroom alongside their other nude or semi-nude siblings.

- Being forced to stand naked in front of their other siblings while being filmed.

- Being forced to perform sexual acts on their siblings.

- Brian and Monica Campbell touching Plaintiffs' private parts, hitting their private parts with various objects, and making fun of Plaintiffs' private parts.

- Prohibiting Plaintiffs from hiding their private parts while being forced to stand naked in front of their siblings.

- Being forced to sleep in cupboards filled and cramped with cat litter boxes.

- Being forced to sleep on the floor of a small laundry room with no blanket or pillow.

- Being forced to drink filthy water from the family's chicken coop. Mahliya was particularly singled out for this form of punishment and abuse and developed worms as a result therefrom.

- Being assaulted with a Taser on a routine basis.

- Routinely being pinned to the ground with one parent sitting on the child's chest and placing his/her hands around the child's neck thereby restricting and/or preventing the child's

breathing, movement, or escape, thereby terrifying him/her with the thought of death.

- Being called defamatory and derogatory names and slurs, including but not limited to, "criminals," "thieves," "rapists," "sluts," "cunts," and "whores."

- Being called "liars," "thieves," and "criminals" and holding Plaintiffs out to the community at large as such.

- Holding Plaintiffs out to the community at large as having incestuous relationships with one another.

- Being open-hand face slapped, punched, kicked, and being beaten with wooden boards, wooden sticks, and leather belts.

- Being told it "would be easy to kill" Plaintiffs, then bury them in the desert where their bodies would be devoured by pigs.

- Handing a gun to Plaintiffs and daring them to shoot themselves.

- Being prohibited from bathing or showering for days at a time.

- Forcing Plaintiffs to drink water from the family's dog bowl at the same time.

- Having their hair shaved as punishment in bizarre and unusual shapes and patterns.

- Being forced to masturbate in front of their other siblings when Plaintiffs reached their teenage years.

- Being forced to a hump a wall in front of siblings and house guests when Plaintiffs reached their teenage years.

- Being forced to draw pictures of penises "hundreds and hundreds" of times.

- Being prohibited from speaking with or communicating with any family member for months at a time, including being banished to solitary confinement in their bedrooms and being

forced to wear sound-proof headphones in an effort to torture Plaintiffs with sensory deprivation.

- Being forced to wear prison inmate uniforms and being referred to as only "numbers," while having their hands bound and zip tied.

32.    At all times relevant, Brian and Monica Campbell abused their respective positions within DCS and the CCSO, and with the cooperation and assistance of DCS and the CCSO, directed those agencies to ignore Plaintiffs' pleas for help while creating fictitious stories to explain Plaintiffs' behavior.

33.    Both DCS and the CCSO are responsible for responding to and investigating reports of child abuse and neglect, yet routinely fail and/or refuse to investigate or bring criminal charges when the abusers are friends, family, or fellow colleagues, and did so in this case, as Defendants Brian and Monica Campbell were fellow friends and colleagues of DCS and the CCSO, respectively, and were given free rein by those agencies to abuse and neglect Plaintiffs.

34.    At all times relevant, the CCSO deliberately and routinely failed and/or refused to execute search warrants, adequately preserve records and other evidence, assign proper personnel to investigate reports of abuse and neglect, and instructed deputies to intentionally ignore Plaintiffs' reports of abuse and neglect.

35.    Such practices, policies, acts, and omissions by DCS and the CCSO include, but are not limited to:

- Conspiring with Brian and Monica Campbell by allowing them to abuse Plaintiffs and by subsequently failing to report, investigate, or substantiate such abuse.

- Failing to enact, provide, and/or follow proper practices, policies, and procedures in their individual and/or official capacities to protect Plaintiffs, including assigning "friends" and colleagues to investigate Plaintiffs' reports of abuse and neglect.

- Acting with willful, wanton, and deliberate indifference to the basic needs and rights of Plaintiffs.

- Engaging in the widespread failure to properly report, investigate, and substantiate clear and convincing indications of child abuse, neglect, and maltreatment of Plaintiffs and other children in similar situations throughout Cochise County and the State of Arizona.

36.    In addition, the State, through its DCS caseworkers, including but not limited to Defendant Brian Campbell, failed to prevent the abuse and neglect of Plaintiffs by following patterns, policies, and practices involving intentional, deliberate, negligent, and grossly negligent acts and omissions, including but not limited to:

- Failing to properly investigate and supervise the placement of Plaintiffs in the Campbell home prior to being adopted.

- Failing to provide and follow proper policies to protect Plaintiffs, including investigating, supervising, and evaluating their complaints of abuse and neglect.

- Failing to listen to and investigate the warnings about the dangers in the Campbell home.

37.    DCS failed to properly investigate over 12 reports of abuse, neglect, and maltreatment in the Campbell home prior to the subsequent criminal complaints filed against Brian and Monica Campbell on or about 05/01/19.  Several calls reported to the DCS abuse hotline were summarily dismissed, ignored, or not taken seriously.

38.    For example, on or about 03/15/12, and after confiding in a friend that her mother had punched her in the face, officials at Mahliya's school called the DCS hotline

to report the suspected abuse.  Despite Mahliya's clearly bruised face, Brian and Monica Campbell denied the allegations as false; DCS and the CCSO in turn made no effort to investigate or substantiate the report.

39.    Similarly, on or about 12/12/16, a CCSO deputy was dispatched to Plaintiff Alec Campbell's ("Alec") high school to investigate a report of abuse at home.  Alec reported that he and Mahliya had been forced by their parents to stand naked in front of their siblings while being videotaped, and that they had been choked and subjected to death threats by their parents.  *See* Exhibit 5, Cochise County Sheriff Officer Report for Incident 16-32686.  Brian and Monica Campbell, DCS, and the CCSO, acting in their individual capacities, official capacities, jointly, and/or in concert, ensured that the report was quashed and not investigated.

40.    On or about 07/21/18, Brian Campbell punched Alec in the face, threw him to the ground, and assaulted him with a Taser while sitting on his chest, rendering Alec helpless.  Monica Campbell was complicit in the actions of her husband and also assisted with the assault of Alec.  Out of desperation, Alec threatened to kill himself and his father as he knew that any CCSO deputy responding to the home would arrest him and take him away from the atrocities he suffered in the Campbell home.  As Alec anticipated, Monica Campbell called the police.  *See* Exhibit 6, Cochise County Sheriff Officer Report for Incident 18-25260.

41.    Instead of Defendant Sgt. Louie Tartaglia, a sworn officer of the CCSO, who on prior occasions responded to, ignored, or covered up calls or reports of abuse

from the Campbell residence, Deputy Jordan Collins, a young deputy relatively new to the CCSO, arrived at the home to investigate the allegations.

42.    Upon arrival, Deputy Collins noticed surveillance cameras installed throughout the Campbell home and asked to view the footage.  *See* Exhibit 7, example still shot of surveillance camera in Campbell home.   Brian and Monica Campbell complied with his request.   After viewing the footage, Deputy Collins placed Brian Campbell under arrest for domestic assault.   However, and consistent with its patterns, policies, and practices to conceal evidence against its own employees or the family members of its employees, the CCSO dropped the charges against Brian Campbell and instead charged Alec with domestic assault.  *See* Exhibit 6, Cochise County Sheriff Officer Report for Incident 18-25260.

43.    On 09/07/18, a search warrant was executed on the Campbell residence by Deputy Collins.   *See* Exhibit 8, Search Warrant dated 09/07/18.   Coincidentally, the surveillance footage that captured the 07/21/18 assault of Alec had been destroyed. Unbeknownst to the CCSO, Deputy Collins had recorded the surveillance footage with his mobile device during his visit on or about 07/21/18 to the Campbell home.

44.    On or about 09/10/18, Brian Campbell was terminated from DCS.   *See* Exhibit 9, Brian Campbell termination letter.

45.    On or about 05/01/19, a 16-count criminal complaint was filed against Brian and Monica Campbell alleging, *inter alia*, Aggravated Assault by Domestic Violence; Child Abuse by Domestic Violence; and Permitting the Life, Health, or Morals

of a Minor to Be Imperiled.  *See* Exhibit 10 and Exhibit 11, Brian Campbell Criminal Complaint and Monica Campbell Criminal Complaint.

46.    On or about 03/16/20, Monica Campbell resigned from the CCSO.  *See* Exhibit 12, Monica Campbell resignation letter.

47.    On or about April 2020, Brian and Monica Campbell consented to the severance of their parental rights as to Plaintiffs.

48.    Even up to and including their sentencing hearing on 01/22/21 whereby they were each sentenced to three years in prison for the acts described herein, Brian and Monica Campbell continued to stalk and harass Plaintiffs.  *See* Exhibit 3 and Exhibit 4, Monica Campbell Plea Agreement and Brian Campbell Plea Agreement.

49.    Plaintiffs will require significant psychiatric and psychological care for the duration of their lives as a result of the intentional, reckless, negligent, and grossly negligent acts and omissions of Defendants as described herein.  All Plaintiffs have suffered, and continue to suffer, severe mental distress, physical injuries, economic hardship, and missed educational opportunities caused by, or allowed to be caused by, Defendants, including both John Doe No.1 and John Doe No. 2 being hospitalized for suicidal ideations and suicide attempts as a result of Defendants' acts and omissions.

50.    As a result of such intentional, reckless, negligent, and grossly negligent acts and omissions, Plaintiffs have suffered and will continue to suffer physical damage and resultant emotional trauma, physical pain, mental anguish, physical disfigurement, hedonic damages and loss of enjoyment of life, loss of earning capacity, and reasonable and necessary medical expenses.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COUNT 1**
**Negligence**
**All Plaintiffs Against All Defendants**

51.     Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 50 above as though fully set forth herein.

52.     Beginning in 2006, Plaintiffs were placed in the foster home of Defendants Brian and Monica Campbell and subsequently adopted by them in 2008.  Between 2006 and 2019, Defendants Brian and Monica Campbell owed a duty of care to Plaintiffs to ensure that their home was safe and secure so that Plaintiffs would be free from abuse, neglect, and harm in that home, and to take all reasonable precautions to avoid placing Plaintiffs at an unreasonable risk of injury.

53.     Between 2006 and 2019, Brian and Monica Campbell failed to exercise reasonable care with respect to the safety and protection of Plaintiffs by performing the acts and omissions described herein.

54.     Beginning in at least February 2012, the State failed to exercise reasonable care with respect to the safety and protection of Plaintiffs because it knew or should have known that the Campbell home was unreasonably dangerous.  On or about February 2012, Mahliya reported to DCS Child Safety Specialist George Watkins that Plaintiffs would be "popped in the mouth with a hand or smacked in the back of the head. Sometimes [we] get spanked with a belt."

55.     On or about 12/12/16, Alec reported to CCSO Sheriff's Deputy Nelson Moreno and Defendant Sgt. Louie Tartaglia of the abuse occurring in the Campbell home.  During an interview with Deputy Moreno, Alec accused Brian and Monica

16

Campbell of several instances of abuse warranting further investigation, including being forced to stand naked while Monica Campbell threatened to kill him, and that such instances of abuse were recorded by the home's surveillance cameras. Despite Monica Campbell admitting to such acts including pushing Mahliya, Sgt. Tartaglia directed Deputy Moreno to leave the room. Sergeant Tartaglia later instructed Deputy Moreno to "not discuss this matter with anyone." Upon information and belief, the CCSO did not conduct any further investigation into Plaintiffs' allegations. *See* Exhibit 5, Cochise County Sheriff Officer Report for Incident 16-32686; Exhibit 13, email string from Deputy Moreno addressing issues of concern regarding the CCSO's investigation into Brian and Monica Campbell.

56.    In fact, from at least 12/12/16 until at least 2018, the County, the CCSO, and their employees failed to exercise reasonable care by dismissing Plaintiffs' cries for help and failed to properly investigate several documented incidents of abuse, neglect, and maltreatment. *See* Exhibit 14, CCSO Officer Report for Incident 18-41899.

57.    Additionally, the State owed Plaintiffs a duty to use due care and exercise reasonable conduct in connection with the health, welfare, and safety of Plaintiffs, when coupled with the hiring, retention and training, supervision, and/or enablement of its employees, agents, partners, principals, servants, contractors, joint venturers, and/or representatives, including but not limited to, Defendant Brian Campbell, in order to ensure that the Campbell home was safe and secure so that Plaintiffs would be free from abuse, neglect, and harm in that home, and to take all reasonable precautions to avoid placing Plaintiffs at an unreasonable risk of injury.

58.     Similarly, the County and the CCSO also owed Plaintiffs a duty to use due care and exercise reasonable conduct in connection with the preservation of peace, order, and safety of the general public, including Plaintiffs, when coupled with the hiring, retention and training, supervision, and/or enablement of its employees, agents, partners, principals, servants, contractors, joint venturers, and/or representatives, including but not limited to, Defendants Monica Campbell, Sheriff Mark J. Dannels, and Sgt. Louie Tartaglia, in order to ensure that the Campbell home was safe and secure so that Plaintiffs would be free from abuse, neglect, and harm in that home, and to take all reasonable precautions to avoid placing Plaintiffs at an unreasonable risk of injury.

59.     From at least the time of Mahliya's initial report to DCS in February 2012 through 01/22/21 regarding the abuse occurring in and outside the Campbell home, the State failed to use due care and exercise reasonable conduct in the hiring, retention and training, supervision, and/or enablement of its employees, agents, partners, principals, servants, contractors, joint venturers, and/or representatives, including but not limited to Defendant Brian Campbell.

60.     From at least 12/12/16 through 01/22/21, the County and CCSO failed to use due care and exercise reasonable conduct in the hiring, retention and training, supervision, and/or enablement of its employees, agents, partners, principals, servants, contractors, joint venturers, and/or representatives, including but not limited to Defendants Monica Campbell, Sheriff Mark J. Dannels, and Sgt. Louie Tartaglia.

.   .   .

.   .   .

61.     On or about 01/22/21, Brian and Monica Campbell were convicted of A.R.S. §§ 13-3601.02 (Aggravated Assault by Domestic Violence), -3601 (Child Abuse by Domestic Violence), -3623 (Child Abuse), and -3619 (Permitting Life, Health, or Morals of Minor to Be Imperiled by Abuse or Neglect) with respect to all Plaintiffs and were each sentenced to three years in prison.  As part of their sentencing, the Cochise County Superior Court imposed a surcharge for "harassment and stalking" up to including the date of their sentencing on 01/22/21.  *See* Exhibit 3 and Exhibit 4, Plea Agreement of Monica Campbell and Plea Agreement of Brian Campbell.

62.     As mandatory reporters, the State, County, CCSO, Dannels, and Tartaglia Defendants were required pursuant to A.R.S. § 13-3620 to report Plaintiffs' allegations of abuse and neglect at the hands of Brian and Monica Campbell.  At all times relevant, the State, County, CCSO, Dannels, and Tartaglia Defendants knew of the Campbells' propensities to violate the aforementioned criminal and/or safety statutes, and such violations constitute negligence *per se* as to all Defendants.

63.     As a direct and proximate result of Defendants' acts and omissions, Plaintiffs suffered damages in an amount to be proven at trial.

### COUNT 2
### Gross/Aggravated Negligence (Willful or Wanton Conduct)
### All Plaintiffs Against All Defendants

64.     Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 63 above as though fully set forth herein.

65.     Defendants engaged in willful or wanton conduct by their actions and inaction and with reckless indifference to the rights and safety of Plaintiffs because they

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

knew or should have known that their actions and inaction created an unreasonable risk of harm to Plaintiffs, and that the risk to Plaintiffs was so great it was highly probable that harm would result.

66.    Defendants Brian and Monica Campbell, in their individual capacities and acting under color of law, were grossly negligent and deliberately indifferent to Plaintiffs by systematically physically, sexually, emotionally, and psychologically abusing them for over a decade.

67.    Brian and Monica Campbell used their respective positions at DCS and CCSO employees, used their positions to abuse and neglect Plaintiffs.    Mahliyah admitted being too scared to tell DCS or CCSO deputies about the abuse due to Monica Campbell's position and friendships within the CCSO and Brian Campbell's position and friendships within DCS.   John Doe 2 reiterated the same to authorities.   Alec reported that although he and his siblings attempted to make reports regarding the abuse, "no steps were ever taken by DCS or the [CCSO] due to Brian's and Monica's employment."   *See* Exhibit 14, CCSO Officer Report for Incident 18-41899.

68.    Monica Campbell coached Plaintiffs as to how to behave and conduct themselves in the event a DCS employee ever visited the Campbell home, and warned that all Plaintiffs would be punished if DCS ever conducted an investigation at the Campbell home.   *See* Exhibit 14, CCSO Officer Report for Incident 18-41899.   When Plaintiffs attempted to report the abuse, Monica Campbell beat them with a wooden baseboard and forced them to stand naked in front of their siblings.   Following any such investigations or interviews with DCS or the CCSO, Monica Campbell interrogated

Plaintiffs to ensure that they responded in a manner that cast her and her husband in a favorable light. *See* <u>Exhibit 14</u>, CCSO Officer Report for Incident 18-41899.

69.     The State was grossly negligent and deliberately indifferent to Plaintiffs by failing to respond to and investigate Plaintiffs' reports of child abuse and neglect, and by failing and/or refusing to bring criminal charges against Brian and Monica Campbell since the first report of abuse was made in 2012 through at least 2018.

70.     The County, CCSO, Dannels, and Tartaglia Defendants were grossly negligent and deliberately indifferent to Plaintiffs by failing to respond to and investigate Plaintiffs' reports of child abuse and neglect, and by failing and/or refusing to bring criminal charges against Brian and Monica Campbell since the first report of abuse was made and documented by the CCSO in 2016 through at least 2018.

71.     Additionally, the County, CCSO, Dannels, and Tartaglia Defendants deliberately and routinely failed and/or refused to execute search warrants, adequately preserve records and other evidence, assign proper personnel to investigate Plaintiffs' reports of abuse and neglect, and instructed deputies to intentionally ignore Plaintiffs' reports of abuse and neglect since the first report of abuse was made and documented by the CCSO in 2016 through at least 2018.

72.     At all times relevant, Defendants engaged in the above-described misconduct under color of law with the intent to cause injury, with the intent that such conduct was motivated by spite or ill will, with the intent to serve their own interests by knowingly and consciously disregarding a substantial risk that their conduct might significantly injure or impair the rights of Plaintiffs, and/or consciously pursued a course

of conduct knowing that it created a substantial risk of significant harm to Plaintiffs.

73.     As a direct and proximate result of Defendants' acts and omissions, Plaintiffs suffered damages in an amount to be proven at trial.

**COUNT 3**
**Assault and Battery**
**All Plaintiffs Against All Defendants**

74.     Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 73 above as though fully set forth herein.

75.     From at least 2012 through 2018, Defendants Brian and Monica Campbell intentionally, knowingly, and/or recklessly cause physical injury to all Plaintiffs.

76.     From at least 2012 through 2018, Brian and Monica Campbell intentionally placed all Plaintiffs in reasonable apprehension of immediate physical injury.

77.     From at least 2012 through 2018, Brian and Monica Campbell, knowingly touched all Plaintiffs with the intent to injure, insult, or provoke them.

78.     On or about August 2018, Defendant Sgt. Louie Tartaglia intentionally, knowingly, and/or recklessly cause physical injury to Alec by using excessive force when arresting Alec for alleged crimes he did not commit, including but not limited to, allegedly assaulting Defendant Brian Campbell.   Such actions by Sgt. Tartaglia intentionally placed Alec in in reasonable apprehension of immediate physical injury with the intent to injure, insult, or provoke Alec.

79.     At all times relevant, the State and County knew of Defendants Brian and Monica Campbells' and Sgt. Tartaglia's propensities to violate the above-described acts of assault and battery in violation of A.R.S. § 13-1203 and did nothing to stop it.  *See*

Exhibit 13, email string from Deputy Moreno addressing issues of concern regarding the CCSO's investigation into Brian and Monica Campbell.  Such acts and omissions constitute negligence *per se* under Arizona law.

80.    As a direct and proximate result of Defendants' acts and omissions, Plaintiffs suffered damages in an amount to be proven at trial.

**COUNT 4**
**Aggravated Assault and Battery**
**Against All Defendants**

81.    Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 80 above as though fully set forth herein.

82.    On or about 07/21/18, Defendants Brian and Monica Campbell assaulted Alec with a deadly weapon or instrument as defined under Arizona law.  Brian and Monica Campbell also routinely would assault their other children with deadly weapons or instruments as defined under Arizona law, including but not limited to wooden board and wooden sticks.

83.    From at least 2012 through 2018 and from at least 2016 through 2018, respectively, the State and County knew of Brian and Monica Campbells' propensities to violate the above-described acts of aggravated assault and battery in violation of A.R.S. §§ 13-1202 and -1204 and did nothing to stop it.  *See* Exhibit 13, email string from Deputy Moreno addressing issues of concern regarding the CCSO's investigation into Brian and Monica Campbell.  Such acts and omissions constitute negligence *per se* under Arizona law.

84.    As a direct and proximate result of Defendants' acts and omissions,

Plaintiffs suffered damages in an amount to be proven at trial.

## COUNT 5
### Intentional Infliction of Emotional Distress (Extreme and Outrageous Conduct)
### All Plaintiffs Against All Defendants

85.     Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 84 above as though fully set forth herein.

86.     At all times relevant, Defendants' conduct described herein was extreme and outrageous.

87.     From at least 2012 through 2018, Defendants Brian and Monica Campbell either intended to cause emotional distress to Plaintiffs or recklessly disregarded the near certainty that such distress would result from their conduct as described herein.

88.     From at least 2012 through 2018, the State either intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result from its conduct consistent with its deficiencies in investigating and reporting the abuse and neglect of Plaintiffs.

89.     From at least 2016 through 2018, the County, CCSO, Dannels, and Tartaglia Defendants either intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result from their conduct consistent with their deficiencies in investigating and reporting the abuse and neglect of Plaintiffs, while deliberately and routinely failing and/or refusing to execute search warrants, adequately preserving records and other evidence, assigning proper personnel to investigate Plaintiffs' reports of abuse and neglect, and instructing deputies to intentionally ignore Plaintiffs' repeated reports of abuse and neglect.

90.     Plaintiffs suffered severe emotional distress as a result of Defendants' conduct as alleged herein, including but not limited to, severe depression, anxiety, suicide attempts, suicidal ideations, and confinement to mental and behavioral health facilities.

91.     At all times relevant, Defendants' conduct was so extreme and outrageous in that any average member of the community would regard such conduct as atrocious, intolerable in a civilized community, and exceeded all bounds of decency.

92.     As a direct and proximate result of Defendants' acts and omissions, Plaintiffs suffered damages and incurred attorneys' fees in an amount to be proven at trial.

**COUNT 6**
**Aiding and Abetting Tortious Conduct**
**All Plaintiffs Against All Defendants**

93.     Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 92 above as though fully set forth herein.

94.     Defendants Brian and Monica Campbell engaged in conduct for which they are liable to Plaintiffs, namely the abuse and neglect of Plaintiffs as described Counts 1 through 5, inclusive, above.

95.     Upon information and belief, from at least 2012 through 2018, the State was aware that Brian and Monica Campbell were abusing and neglecting Plaintiffs as described herein and did nothing to stop it.

96.     Upon information and belief, from at least 2016 through 2018, the County was aware that Brian and Monica Campbell were abusing and neglecting Plaintiffs as described herein and did nothing to stop it.  *See* <u>Exhibit 13</u>, email string from Deputy

Moreno addressing issues of concern regarding the CCSO's investigation into Brian and Monica Campbell.

97.     Upon information and belief, from at least between 2012 and 2018, the State, through DCS, provided substantial assistance or encouragement to Brian and Monica Campbell by allowing such abuse and neglect to continue for years without State intervention and without any repercussions for Brian and Monica Campbell.

98.     Upon information and belief, from at least 2016 through 2018, the County, through the CCSO, Dannels, and Tartaglia Defendants, provided substantial assistance or encouragement to Brian and Monica Campbell by allowing such abuse and neglect to continue for years without County intervention and without any repercussions for Brian and Monica Campbell.

99.     Upon information and belief, from at least 2016 through 2018, both the State, through DCS, and the County, through the CCSO, Dannels, and Tartaglia Defendants worked together by aiding and abetting Brian and Monica Campbell to abuse and neglect Plaintiffs without State or County intervention and without any repercussions for Brian and Monica Campbell.

100.    All Defendants caused damages to Plaintiffs, namely by intentionally, willfully, recklessly, negligently, and/or grossly negligently agreeing, allowing, and/or enabling Brian and Monica Campbell to continue to abuse and neglect Plaintiffs and without any repercussions for Brian and Monica Campbell.

101.    In view of this aiding and abetting, Defendants, and each of them, are both agents and principals of each other, were acting in concert, and are therefore jointly and

severally liable for the damages suffered by Plaintiffs as alleged herein in Counts 1 through 5, inclusive, and pursuant to A.R.S. §§ 12-2506(D)(1) and (2).

## COUNT 7
## Civil Conspiracy
## All Plaintiffs Against All Defendants

102.    Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 101 above as though fully set forth herein.

103.    Defendants Brian and Monica Campbell engaged in conduct for which they are liable to Plaintiffs, namely the abuse and neglect of Plaintiffs as described Counts 1 through 5, inclusive, above.

104.    Upon information and belief, from at least 2012 through 2018, the State was aware that Brian and Monica Campbell were abusing and neglecting Plaintiffs as described herein and did nothing to stop it.

105.    Upon information and belief, from at least 2016 through 2018, the County was aware that Brian and Monica Campbell were abusing and neglecting Plaintiffs as described herein and did nothing to stop it.  *See* Exhibit 13, email string from Deputy Moreno addressing issues of concern regarding the CCSO's investigation into Brian and Monica Campbell.

106.    Upon information and belief, from at least 2012 through 2018, the State, through DCS, agreed with Brian and Monica Campbell to accomplish an unlawful purpose by unlawful means by allowing such abuse and neglect to continue for years without State intervention and without any repercussions for Brian and Monica Campbell.

107.    Upon information and belief, from at least 2016 through 2018, the County, through the CCSO, Dannels, and Tartaglia Defendants, agreed with Brian and Monica Campbell to accomplish an unlawful purpose by unlawful means by allowing such abuse and neglect to continue for years without County intervention and without any repercussions for Brian and Monica Campbell.

108.    Upon information and belief, from at least 2016 through 2018, both the State, through DCS, and the County, through the CCSO, Dannels, and Tartaglia Defendants, agreed with Brian and Monica Campbell to accomplish an unlawful purpose by unlawful means by allowing such abuse and neglect to continue for years without State or County intervention and without any repercussions for Brian and Monica Campbell.

109.    All Defendants caused damages to Plaintiffs, namely by intentionally, willfully, recklessly, negligently, and/or grossly negligently agreeing, allowing, and/or enabling Brian and Monica Campbell to continue to abuse and neglect Plaintiffs and without any repercussions for Brian and Monica Campbell.

110.    In view of this conspiracy, Defendants, and each of them, are both agents and principals of each other, were acting in concert, and are therefore jointly and severally liable for the damages suffered by Plaintiffs as alleged herein in Counts 1 through 5, inclusive, and pursuant to A.R.S. §§ 12-2506(D)(1) and (2).

### COUNT 8
### Joint Venture
### All Plaintiffs Against All Defendants

111.    Plaintiffs repeat and incorporate by reference the allegations contained in

paragraphs 1 through 110 above as though fully set forth herein.

112.   Defendants Brian and Monica Campbell engaged in conduct for which they are liable to Plaintiffs, namely the abuse and neglect of Plaintiffs as described in Counts 1 through 5, inclusive, above.

113.   Upon information and belief, from at least 2012 through 2018, the State was aware that Brian and Monica Campbell were abusing and neglecting Plaintiffs as described herein and did nothing to stop it.

114.   Upon information and belief, from at least 2016 through 2018, the County was aware that Brian and Monica Campbell were abusing and neglecting Plaintiffs as described herein and did nothing to stop it.  *See* Exhibit 13, email string from Deputy Moreno addressing issues of concern regarding the CCSO's investigation into Brian and Monica Campbell.

115.   Upon information and belief, from at least 2012 through 2018, the State, through DCS, shared an agreement, a common purpose, a community of interest, and/or an equal right of control with Brian and Monica Campbell, by allowing such abuse and neglect of Plaintiffs to continue for years without State intervention and without any repercussions for Brian and Monica Campbell.

116.   Upon information and belief, from at least 2016 through 2018, the County, through the CCSO, Dannels, and Tartaglia Defendants, shared an agreement, a common purpose, a community of interest, and/or an equal right of control with Brian and Monica Campbell, by allowing such abuse and neglect of Plaintiffs to continue for years without County intervention and without any repercussions for Brian and Monica Campbell.

117.   Upon information and belief, from at least 2016 through 2018, both the State, through DCS, and the County, through the CCSO, Dannels, and Tartaglia Defendants, shared an agreement, a common purpose, a community of interest, and/or an equal right of control with Brian and Monica Campbell, by allowing such abuse and neglect of Plaintiffs to continue for years without State or County intervention and without any repercussions for Brian and Monica Campbell.

118.   All Defendants caused damages to Plaintiffs, namely by intentionally, willfully, recklessly, negligently, and/or grossly negligently agreeing, allowing, and/or enabling Brian and Monica Campbell to continue to abuse and neglect Plaintiffs and without any repercussions for Brian and Monica Campbell.

119.   In view of this joint venture, Defendants, and each of them, are both agents and principals of each other, were acting in concert, and are therefore jointly and severally liable for the damages suffered by Plaintiffs as alleged herein in Counts 1 through 5, inclusive, and pursuant to A.R.S. §§ 12-2506(D)(1) and (2).

**COUNT 9**
**Vicarious Liability/Agency/*Respondeat Superior***
**All Plaintiffs Against the State, County, and the CCSO**

120.   Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 119 above as though fully set forth herein.

121.   At all times relevant, the actions of Defendant Brian Campbell were the type of actions those State and DCS employees were authorized to perform within the course and scope of their employment, namely protecting children, including Plaintiffs.

.  .  .

122.   At all times relevant, the actions of Defendants Monica Campbell, Sheriff Mark J. Dannels, and Sgt. Louie Tartaglia were the type of actions those County and CCSO employees were authorized to perform within the course and scope of their employment, namely protecting children, including Plaintiffs.

123.   At all times relevant, the acts described herein occurred substantially within the time and space limits authorized by the State, County, and the CCSO.

124.   At all times relevant, the acts described herein were motivated by a purpose to serve the State, County, and the CCSO, so that Brian and Monica Campbell, Sheriff Dannels, and Sgt. Tartaglia could continue engaging in the State's, County's, and the CCSO's culture of cronyism and corruption.

125.   As a result of the acts and omissions of Brian and Monica Campbell, Sheriff Dannels, and Sgt. Tartaglia, the State, County, and the CCSO are responsible for the emotional trauma, physical pain, mental anguish, hedonic damages and loss of enjoyment of life, loss of earning capacity, and reasonable and necessary medical expenses suffered by Plaintiffs.

**COUNT 10**
**Negligent Hiring and Retention**
**All Plaintiffs Against the State, County, and the CCSO**

126.   Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 125 above as though fully set forth herein.

127.   Upon information and belief, prior to his hiring in 2015 and until his termination in 2018, the State knew that Defendant Brian Campbell was an abusive parent and an incompetent and corrupt DCS Child Safety Specialist and that no

reasonable and prudent person or employer would allow or enable him to have access to any child and/or to be employed by DCS. For example, on or about 06/05/15, just two months before being hired as a DCS Child Safety Specialist, Brian Campbell was involuntarily terminated for failing to pass probationary status as a Juvenile Probation Officer in Cochise County.

128.    Upon information and belief, from at least 2015 through 2018, the State failed to enact proper safety regulations and/or failed to properly supervise Brian Campbell by causing, or allowing to be caused, the abuse and neglect of Plaintiffs, despite knowing of Brian Campbell's propensity for abusing and neglecting his children.

129.    Upon information and belief, prior to and during the time of her employment with the CCSO from 2009 through 2020, the County knew that Defendant Monica Campbell was an abusive parent and an incompetent and corrupt Dispatch Supervisor and that no reasonable person or employer would allow or enable her to have access to any child and/or to be employed by the CCSO. *See* Exhibit 5, Cochise County Sheriff Officer Report for Incident 16-32686; Exhibit 13, email string from Deputy Moreno addressing issues of concern regarding the CCSO's investigation into Brian and Monica Campbell.

130.    Upon information and belief, from at least 2009 through 2020, the County failed to enact proper safety regulations and/or failed to properly supervise Defendant Monica Campbell by causing, or allowing to be caused, the abuse and neglect of Plaintiffs, despite knowing of Monica Campbell's propensity for abusing and neglecting her children.

131.    Upon information and belief, from at least the time of his election as Sheriff of Cochise County in 2012 through the present, the County knew or should have known that Defendant Mark J. Dannels was an incompetent and corrupt County Sheriff and County Officer and that no reasonable person or employer would allow or enable him to manage and oversee the CCSO.  Sheriff Dannels is currently being sued for allegedly suppressing and fabricating evidence while serving as police chief in Coquille, Oregon, in 2010 which led to the false murder conviction and nine-year imprisonment of Nicholas McGuffin.  *See* <u>Exhibit 15</u>, news article regarding the same.

132.    Mr. McGuffin was released from prison in 2019 because of the "suppression of the exculpatory DNA evidence" by the Coquille Police Department under now-Cochise County Sheriff Mark J. Dannels' watch.  Despite this clear representation of Sheriff Dannels' propensity for corruption and suppression of evidence, and coupled with the fact that this information was easily and readily accessible to the County at the time Sheriff Dannels was elected to his current position in 2012, and reelected again in 2016, the County gave Sheriff Dannels the power to oversee investigations including but not limited to those pertaining to Defendants Brian and Monica Campbell from at least 2012 through the present.  In fact, Sheriff Dannels is currently involved in five additional investigations of alleged misconduct.  *See* <u>Exhibit 16</u>, <u>Exhibit 17</u>, <u>Exhibit 18</u>, <u>Exhibit 19</u>, and <u>Exhibit 20</u>, news articles regarding the same.

133.    Upon information and belief, from at least 2016 through 2018, the County failed to enact proper safety regulations and/or failed to properly supervise Sheriff Dannels by causing, or allowing to be caused, the abuse and neglect of Plaintiffs, despite

Sheriff Dannels' knowledge of Defendant Monica Campbell's propensity for abusing and neglecting her children.

134.    Upon information and belief and at all times relevant, the County knew that Defendant Sgt. Louie Tartaglia was an incompetent and corrupt law enforcement officer and that no reasonable person or employer would allow or enable him to serve as a law enforcement officer for the CCSO.  Upon information and belief, the County failed to enact proper safety regulations and/or failed to properly supervise Sgt. Tartaglia by causing, or allowing to be caused, the abuse and neglect of Plaintiffs, despite the County's knowledge of Brian and Monica Campbell's propensity for abusing and neglecting their children.  *See* Exhibit 5, Cochise County Sheriff Officer Report for Incident 16-32686; Exhibit 13, email string from Deputy Moreno addressing issues of concern regarding the CCSO's investigation into Brian and Monica Campbell.

135.    At a minimum, the County and the CCSO were aware of Sgt. Tartaglia's inability to properly act as a law enforcement officer as early as 12/12/16.  Sergeant Tartaglia's cover-up of the crimes committed by Brian and Monica Campbell were never investigated, and as a result, Brian and Monica Campbell were never held accountable for their actions until their 2019 indictments.  The County knew, or should have known, of Sgt. Tartaglia's incompetence prior to his hiring with the CCSO.  The County knew Sgt. Tartaglia favored Monica Campbell and allowed her free rein to abuse her children since at least the incident reported on 12/12/16.  Sergeant Tartaglia and other CCSO employees routinely allowed friends and family to escape accountability for their alleged criminal behavior.  *See* Exhibit 5, Cochise County Sheriff Officer Report for Incident 16-32686;

Exhibit 13, email string from Deputy Moreno addressing issues of concern regarding the CCSO's investigation into Brian and Monica Campbell.

136.   At all times relevant, the State was negligent, grossly negligent, and/or reckless in the hiring, retention, and/or enablement of Brian Campbell's abuse and neglect of Plaintiffs.

137.   At all times relevant, the County was negligent, grossly negligent, and/or reckless in the hiring, retention, and/or enablement of Monica Campbell's abuse and neglect of Plaintiffs.

138.   At all times relevant, the County was negligent, grossly negligent, and/or reckless in the hiring and retention of Sheriff Dannels' managing and overseeing of the CCSO.

139.   At all times relevant, the County was negligent, grossly negligent, and/or reckless in the hiring, retention, and/or enablement of Sgt. Tartaglia's acts and omissions in connection with the abuse and neglect of Plaintiffs.

140.   As a direct and proximate result of the State's, County's, and the CCSO's acts and omissions, Plaintiffs suffered damages in an amount to be proven at trial.

**COUNT 11**
**Civil Rights Violations Under 42 U.S.C. § 1983**
**All Plaintiffs Against All Defendants (Except for Defendant State of Arizona/DCS)**

141.   Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 140 above as though fully set forth herein.

142.   The Civil Rights Act provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or

1
2
3
4

causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

5
6
7

**Plaintiffs' First Civil Rights Claim—As Applied to Plaintiff Alec Campbell Only (Excessive Force—State Official and Peace Officer Liability)**

8
9

143.    Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 142 above as though fully set forth herein.

10
11
12
13
14
15
16
17
18
19
20

144.    Alec holds claims against Defendants under 42 U.S.C. § 1983, and for punitive damages in connection with his wrongful arrest for events that transpired on or after 07/21/18.  *See* <u>Exhibit 6</u>, Cochise County Sheriff Officer Report for Incident 16-25260.  The force used by the individual Defendants was excessive and therefore violates the Fourth Amendment of the United States Constitution which prohibits unreasonable searches and seizures.   At all times relevant, the individual Defendants had actual awareness that Alec had constitutional protections against unreasonable searches and seizures.  Despite having actual awareness of these protections, the individual Defendants violated Alec's constitutional rights.

21
22
23
24
25

145.    The individual Defendants' actions demonstrate the CCSO's absolute failure to train the individual Defendants.  The CCSO had a duty to ensure that officers were adequately trained in dealing with abused and neglected children.  The County is liable under 42 U.S.C. § 1983 for failing to train its law enforcement officers.

26
27
28

146.    Regardless of the alleged reasons for Alec's wrongful arrest that transpired on or after 07/21/18, the actions taken by the individual Defendants demonstrate a

complete disregard for Alec's Fourth Amendment rights.

147.   Alec's wrongful arrest resulted from the use of force that was clearly excessive to the need, and the excessiveness was objectively unreasonable, given that the CCSO knew that the 07/21/18 altercation between Alec and Defendants Brian and Monica Campbell had been recorded by the Campbell's home surveillance cameras and that the CCSO knew or should have known that such footage had been destroyed.  The County is therefore liable under 42 U.S.C. § 1983 for using excessive force against Alec.

148.   Furthermore, Defendants are not entitled to qualified immunity because they violated Alec's clearly established constitutional rights.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known"); *see also Pearson v. Callahan*, 555 U.S. 223, 230-32, 235-36 (2009) (in deciding if qualified immunity applies, a court must determine (1) whether the facts alleged show the defendant's conduct violated a constitutional right; and (2) whether that right was clearly established at the time of the violation).

149.   Alec brings this claim against the individual Defendants pursuant to 42 U.S.C. § 1983, and for punitive damages.

150.   The force used by each individual Defendant was excessive and therefore violates the Fourth Amendment of the United States Constitution which prohibits unreasonable searches and seizures.  Factors in determining whether a use of force was reasonable include the relationship between the need for use of force and the amount of

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015).

151.   At all times relevant, each individual Defendant had actual awareness that Alec had constitutional protections against unreasonable search and seizure. Despite having actual awareness of these protections, Defendants violated Alec's constitutional rights under color of law.

**Plaintiffs' Second Civil Rights Claim**
**(Inadequate Training—Against Defendant Cochise County)**

152.   Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 151 above as though fully set forth herein.

153.   As Sheriff for the County, Defendant Mark J. Dannels is liable under 42 U.S.C. § 1983 for failing to train the CCSO's law enforcement officers and other County officials and employees of the CCSO. A municipality or other local government unit, such as a county, may not be sued under § 1983 solely because an injury was inflicted by one of its employees or agents; rather, the county is liable only when the execution of its policy or custom inflicts a constitutional injury. *See, e.g., Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

154.   The actions of Sheriff Mark J. Dannels, clearly demonstrate a complete and total failure to train Defendants Sgt. Louie Tartaglia and Monica Campbell. The County was aware that Plaintiffs endured years of abuse and neglect at the hands of Brian and Monica Campbell. However, and due to a complete lack of training in dealing with

abused children, the County failed to properly respond Plaintiffs' complaints, all of whom at all times relevant, were children or teenagers in crisis. Defendants failed to recognize or even acknowledge Plaintiffs' defenseless situation.

155. The actions of Sheriff Mark J. Dannels demonstrate an absolute failure to train Defendants Sgt. Louie Tartaglia and Monica Campbell. Sheriff Dannels had a duty to ensure that officers and other CCSO officials and employees were adequately trained in dealing with abused and neglected children. The County is therefore liable under 42 U.S.C. § 1983 for failing to train its law enforcement officers, officials, and employees, including but not limited to, Sgt. Louie Tartaglia and CCSO Dispatch Supervisor Monica Campbell.

**Plaintiffs' Third Civil Rights Claim**
**(Supervisor Liability—Against Cochise County Sheriff Mark J. Dannels)**

156. Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 155 above as though fully set forth herein.

157. As Sheriff for the County, Defendant Mark J. Dannels had the duty to ensure that officers and other CCSO officials and employees, including Defendants Sgt. Louie Tartaglia and Monica Campbell, received proper crisis intervention training ("CIT") when dealing with abused and neglected children with mental health issues. CIT training gives officers a basic understanding of mental health issues, including those of abused and neglected children, and appropriate communication tactics. CIT training is completely different from typical police training. For example, situations involving abused and neglected children require a greater degree of patience, understanding, and investigation. Properly trained CIT officers and personnel are trained not to let external

factors and pressures—such as cronyism and "loyalty" to fellow colleagues—to be a factor in their decision making.  The individual County Defendants' treatment and callous disregard of Plaintiffs' basic rights reflect a clearly deficient training of CCSO employees with regard to the mental health issues associated with abused and neglected children.  Such a level of indifference equates to a deliberate indifference to the constitutional rights of Plaintiffs.

158.   The acts and omissions of the County deprived Plaintiffs of their civil rights under the United States Constitution.  In connection with these claims, Plaintiffs are entitled to recover attorneys' fees and costs as required by the Civil Rights Attorneys' Fees Award Act of 1976.  *See* 42 U.S.C. § 1988.

**Plaintiffs' Fourth Civil Rights Claim**
**(Substantive Due Process and Equal Protection)**

159.   Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 158 above as though fully set forth herein.

160.   In addition to violating the rights guaranteed to Plaintiffs by the Fourth Amendment of the United States Constitution, Defendants (excluding the State and DCS), while acting under color of law, violated the rights guaranteed to Plaintiffs by the Due Process and Equal Protection clauses of the Fourteenth Amendment of the United States Constitution.  Moreover, Defendants (excluding the State of Arizona and DCS) deprived Plaintiffs of their right to substantive due process as a result of the acts and omissions alleged herein.

.   .   .

.   .   .

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT 12
### Slander and Libel *Per Se*
### All Plaintiffs Against Defendants Brian and Monica Campbell

161.   Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 160 above as though fully set forth herein.

162.   On or about 12/12/16, Defendant Monica Campbell intentionally, recklessly, knowingly, and/or negligently told DCS and CCSO employees that all Plaintiffs were "thieves," a crime of moral turpitude.  *See* <u>Exhibit 5</u>, Cochise County Sheriff Officer Report for Incident 16-32686.

163.   Monica Campbell, acting on behalf of and in furtherance of her marital community, made such defamatory statements to the community at large.   Monica Campbell knew her statements were false and were defamatory to Plaintiffs.   Monica Campbell acted in reckless disregard concerning the truth of her statements.   In the alternative, Monica Campbell acted negligently in failing to ascertain the truth or falsity of her statements.

164.   At all times relevant, Plaintiffs were private figures and such statements, albeit defamatory, were a matter of private concern.

165.   Such malicious and defamatory statements caused Plaintiffs to suffer damages, namely humiliation, mental anguish, emotional distress, and embarrassment.

166.   As a direct and proximate result of Monica Campbell's acts and omissions, Plaintiffs suffered damages in an amount to be proven at trial and are entitled to an award of punitive damages.

.   .   .

1
2
3

**COUNT 13**
**False Light**
**Plaintiffs Alec and Mahliya Campbell**
**Against Defendants Brian and Monica Campbell**

4       167.   Plaintiffs repeat and incorporate by reference the allegations contained in
5
paragraphs 1 through 166 above as though fully set forth herein.
6
7       168.   On or about 12/12/16, Defendant Monica Campbell intentionally,
8   recklessly, knowingly, and/or negligently told DCS and CCSO employees that Alec and
9   Mahliya wanted to have sex with one another, were in an incestuous relationship, and that
10  Alec was "sexually attracted to Mahliya." *See* <u>Exhibit 5</u>, Cochise County Sheriff Officer
11
Report for Incident 16-32686.
12
13      169.   Such statements were made in false light by Monica Campbell and on
14  behalf of and in furtherance of her martial community.

15      170.   At all times relevant, Monica Campbell had knowledge of or acted in
16
17  reckless disregard as to the falsity of the publicized matter and the false light in which
18  Alec and Mahliya were placed.  Monica Campbell knowingly or recklessly published this
19  false information or innuendo about Alec and Mahliya that a reasonable person would
20  find highly offensive.
21
22      171.   Such statements made in false light caused Alec and Mahliya to suffer
23  damages, namely humiliation, mental anguish, emotional distress, and embarrassment.

24      172.   As a direct and proximate result of Monica Campbell's acts and omissions,
25  Plaintiffs Alec and Mahliya Campbell suffered damages in an amount to be proven at
26
trial and are entitled to an award of punitive damages.
27
28  .   .   .

42

1

**PRAYER FOR RELIEF**

2

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

3

A.    For Plaintiffs' damages in an amount to be proven at trial by jury;

4

5

B.    For Plaintiffs' incurred costs together with interest at the highest lawful rate

6

on the total amount of all sums awarded from the date of judgment until paid;

7

C.    For the fair and reasonable monetary value of Plaintiffs' past, present, and

8

future medical bills, pain, suffering, impairment, hedonic damages, loss of enjoyment of

9

life, and loss of earning capacity;

10

11

D.    For punitive and exemplary damages as allowed by Arizona and federal

12

law;

13

E.    For attorneys' fees incurred; and

14

15

F.    For such other and further relief in law and equity as the Court deems

16

appropriate.

17

18

19

20

21

22

23

24

25

26

27

28

1

**DEMAND FOR JURY TRIAL**

2

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand

3

a jury trial on all Counts so triable.

4

5

6

RESPECTFULLY SUBMITTED this 26th day of February, 2021.

7

8

**CADIGAN LAW FIRM, LLC**

9

10

-and-

11

**BURG SIMPSON**
**ELDREDGE HERSH & JARDINE, P.C.**

12

13

14

*/s/ Christopher Post*
Lynne M. Cadigan

15

J. Tyrrell Taber
Christopher Post

16

*Attorneys for Plaintiffs*

17

18

19

20

21

22

23

24

25

26

27

28

44