**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alec Campbell, et al., | No. CV-21-00002-TUC-SHR |
| Plaintiffs, | **Order Re: Defendants' Motion to Dismiss** |
| v. | |
| State of Arizona, et al., | |
| Defendants. | |

Pending before the Court is Defendants Brian Campbell and Monica Campbell's ("the Campbells") Motion to Dismiss (Doc. 24) and the State of Arizona's ("State") Motion to Dismiss. (Doc. 26.) On February 26, 2021, Plaintiffs Alec Campbell, Mahliya Campbell, and Fleming & Curti, PLC, in its capacity as conservator for two John Doe minors ("Plaintiffs") filed their First Amended Complaint ("FAC") against Defendants, asserting claims of negligence, gross/aggravated negligence (willful or wanton conduct), assault and battery, aggravated assault and battery, intentional infliction of emotional distress (extreme and outrageous conduct), aiding and abetting tortious conduct, civil conspiracy, joint venture, vicarious liability/agency/respondeat superior, negligent hiring and retention, civil rights violations under 42 U.S.C. § 1983, slander and libel per se, and false light. (Doc. 15.) The Campbells and the State filed their motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 24 at 2; Doc. 26 at 1.) For the reasons stated below, the Campbells' Motion to Dismiss is granted in-part and denied in-part. The State's Motion to Dismiss is denied as moot and all state-law claims are

remanded to the Cochise County Superior Court.

**I. Background**

The following facts are derived from Plaintiff's FAC. The Campbells fostered Plaintiffs between 2006 and 2008 and they adopted all four of them sometime around 2008. (Doc. 15 ¶¶ 2, 21.) In April 2009, the Cochise County Sheriff's Office ("CCSO") hired Defendant Monica Campbell as a Dispatch Supervisor and she "was responsible for receiving, supervising, and responding to 911 calls." (Doc. 15 ¶ 24.) In August 2015, the State hired Defendant Brian Campbell as a Child Safety Specialist at Department of Child Safety, where his duties included "assessing child safety and risk for the most vulnerable children in Arizona, including investigating and reporting any and all allegations of suspected child abuse, neglect, and/or maltreatment." (Doc. 15 ¶¶ 22-23.)

Plaintiffs allege:

> Since the time Plaintiffs were each respectively placed in the home of [the Campbells] as foster children and subsequently adopted, the Campbells systematically physically, sexually, emotionally, and psychologically abused and tortured Plaintiffs. At all times relevant, Brian Campbell was acting in his individual capacity under color of law through his position as a DCS Child Safety Specialist. Similarly, and at all times relevant, Monica Campbell was acting in her individual capacity under color of law through her position as the CCSO Dispatch Supervisor.
> Such acts included, but are not limited to, sexual abuse, child abuse, domestic assault, assault and battery, aggravated assault and battery, defamation, public humiliation, intimidation, depriving Plaintiffs of food and water, threatening to kill Plaintiffs, prohibiting Plaintiffs from bathing or showering for long periods of time, and conspiring with DCS and the CCSO to cover up their actions by failing to report and investigate the abuse in violation of A.R.S. § 13-3620.

(Doc. 15 ¶¶ 27-28.)

Plaintiffs allege the following acts of abuse occurred "during the entire time [they] resided in the Campbell home":

- Being forced to regularly stand naked between the kitchen and dining room

as a form of "discipline" where they would be hit with a wooden stick or board, leaving bruises on their buttocks.

- Withholding of food for up to three days and then being called "thieves" for eating food from their own kitchen.
- Prohibiting Plaintiffs from using the restroom and instead forcing them to urinate and defecate in cat litter boxes located in their bedrooms.
- Being stripped naked and forced to sleep in their parents' bedroom alongside their other nude or semi-nude siblings.
- Being forced to stand naked in front of their other siblings while being filmed.
- Being forced to perform sexual acts on their siblings.
- Brian and Monica Campbell touching Plaintiffs' private parts, hitting their private parts with various objects, and making fun of Plaintiffs' private parts.
- Prohibiting Plaintiffs from hiding their private parts while being forced to stand naked in front of their siblings.
- Being forced to sleep in cupboards filled and cramped with cat litter boxes.
- Being forced to sleep on the floor of a small laundry room with no blanket or pillow.
- Being forced to drink filthy water from the family's chicken coop. Mahliya was particularly singled out for this form of punishment and abuse and developed worms as a result therefrom.
- Being assaulted with a Taser on a routine basis.
- Routinely being pinned to the ground with one parent sitting on the child's chest and placing his/her hands around the child's neck thereby restricting and/or preventing the child's breathing, movement, or escape, thereby terrifying him/her with the thought of death.
- Being called defamatory and derogatory names and slurs, including but not limited to: "criminals," "thieves," "rapists," "sluts," "cunts," and "whores."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- Being called "liars," "thieves," and "criminals" and holding Plaintiffs out to the community at large as such.
- Holding Plaintiffs out to the community at large as having incestuous relationships with one another.
- Being open-hand face slapped, punched, kicked, and being beaten with wooden boards, wooden sticks, and leather belts.
- Being told it "would be easy to kill" Plaintiffs, then bury them in the desert where their bodies would be devoured by pigs.
- Handing a gun to Plaintiffs and daring them to shoot themselves.
- Being prohibited from bathing or showering for days at a time.
- Forcing Plaintiffs to drink water from the family's dog bowl at the same time.
- Having their hair shaved as punishment in bizarre and unusual shapes and patterns.
- Being forced to masturbate in front of their other siblings when Plaintiffs reached their teenage years.
- Being forced to a hump a wall in front of siblings and house guests when Plaintiffs reached their teenage years.
- Being forced to draw pictures of penises "hundreds and hundreds" of times.
- Being prohibited from speaking with or communicating with any family member for months at a time, including being banished to solitary confinement in their bedrooms and being forced to wear sound-proof headphones in an effort to torture Plaintiffs with sensory deprivation.
- Being forced to wear prison inmate uniforms and being referred to as only "numbers," while having their hands bound and zip tied.  (Doc. 15 ¶ 31.)

Plaintiffs allege the Campbells "abused their respective positions within DCS and the CCSO, and with the cooperation and assistance of DCS and the CCSO, directed those agencies to ignore Plaintiffs' pleas for help while creating fictitious stories to explain Plaintiffs' behavior." (Doc. 15 ¶ 32.)  Plaintiffs allege that because Brian Campbell and

Monica Campbell were "fellow friend and colleagues of DCS and the CCSO", they were "given free rein by those agencies to abuse and neglect Plaintiffs." (Doc. 15 ¶ 33.) Specifically, Plaintiffs allege DCS and CCSO:

- "Conspir[ed] with Brian Campbell and Monica Campbell by allowing them to abuse Plaintiffs and by subsequently failing to report, investigate, or substantiate such abuse."
- "Faili[ed] to enact, provide, and/or follow proper practices, policies, and procedures in their individual and/or official capacities to protect Plaintiffs, including assigning 'friends' and colleagues to investigate Plaintiffs' reports of abuse and neglect."
- "Act[ed] with willful, wanton, and deliberate indifference to the basic needs and rights of Plaintiffs."
- "Engag[ed] in the widespread failure to properly report, investigate, and substantiate clear and convincing indications of child abuse, neglect, and maltreatment of Plaintiffs and other children in similar situations throughout Cochise County and the State of Arizona." (Doc. 15 ¶ 35.)

Plaintiffs allege "the State, through its DCS caseworkers, including but not limited to Defendant Brian Campbell, failed to prevent the abuse and neglect of Plaintiffs by following patterns, policies, and practices involving intentional, deliberate, negligent, and grossly negligent acts and omissions," including:

- Failing to properly investigate and supervise the placement of Plaintiffs in the Campbell home prior to being adopted.
- Failing to provide and follow proper policies to protect Plaintiffs, including investigating, supervising, and evaluating their complaints of abuse and neglect.
- Failing to listen to and investigate the warnings about the dangers in the Campbell home. (Doc. 15 ¶ 36.)

Specifically, Plaintiffs allege DCS failed to properly investigate over twelve reports

of abuse, neglect, and maltreatment in the Campbell home prior to May 2019. (Doc. 15 ¶ 37.) According to Plaintiffs, "[s]everal calls reported to the DCS abuse hotline were summarily dismissed, ignored, or not taken seriously." (Doc. 15 ¶ 37.) This included a March 2012 report where school officials called the DCS hotline and reported suspected abuse due to Mahliya's bruised face and a December 2016 report where Alec informed school officials that he and Mahliya "had been forced by their parents to stand naked in front of their siblings while being videotaped, and that they had been choked and subjected to death threats by their parents." (Doc. 15 ¶¶ 38-39.)

Plaintiffs allege that in July 2018 "Brian Campbell punched Alec in the face, threw him to the ground, and assaulted him with a Taser while sitting on his chest, rendering Alec helpless." (Doc. 15 ¶ 40.) Alec threatened to kill Brian Campbell and himself out of desperation because he knew he would be arrested and taken away from the home. (Doc. 15 ¶ 40.) After Monica Campbell called the police, CCSO Deputy Jordan Collins saw footage from surveillance cameras in the Campbell home and arrested Brian Campbell for domestic assault. (Doc. 15 ¶¶ 40-42.) But CCSO subsequently dropped the charges against Brian Campbell and charged Alec with domestic assault. (Doc. 15 ¶ 42.) On September 7, 2018, Collins executed a search warrant to obtain the surveillance footage from the July 2018 incident. (Doc. 15 ¶ 43.) He was unable to obtain the footage because it had been destroyed, but he had recorded the surveillance footage with his mobile device when he initially investigated. (Doc. 15 ¶ 43.)

On September 9, 2018, Brian Campbell was terminated from DCS, and in May 2019, a sixteen-count criminal complaint was filed against the Campbells. (Doc. 15 ¶¶ 44-45.) In March 2020, Monica Campbell resigned from the CCSO and the Campbells consented to the severance of their parental rights as to Plaintiffs in April 2020. (Doc. 15 ¶¶ 46-47.) The Campbells accepted a plea and were sentenced to three years in prison in January 2021 for four counts of child abuse. (Doc. 15 ¶ 48; Exs. 3-4.) In November 2020, Plaintiffs filed a complaint in Cochise County Superior Court. (Doc. 1-3 at 20.) In January 2020, Defendants Cochise County and Mark Dannels filed a notice of removal of action

arguing federal question jurisdiction was proper because the action involved a federal question based on the 42 U.S.C. § 1983 allegations and supplemental jurisdiction was proper with respect to the state-law claims. (Doc. 1 at 1-3; Doc. 1-1 at 1-2; Doc 1-2 at 1-3.) The remaining defendants agreed and joined in and consented to the removal of this matter to federal court. (Doc. 8; Doc. 10; Doc. 11.)

The Campbells and the State filed their Motions to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docs. 24 at 2; 26 at 1.) The Campbells argue, among other things, Plaintiffs Alec and Mahliya's official-capacity claims against them are barred due to failure to comply with the notice-of-claim statute, some of Plaintiffs Alec and Mahliya's individual-capacity claims are barred by the statute of limitations, and Plaintiffs have failed to sufficiently state any § 1983 claim. (Doc. 24 at 3-13.) The State argues, among other things, Plaintiffs Mahliya and Alec's state-law claims are untimely and barred by the notice-of-claim statute, irrespective of A.R.S. § 12-514, and the statute of limitations. (Doc. 26 at 5-10.)

**II. Motion to Dismiss Standards**

Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." While Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under Rule 12(b)(6), a party may move to dismiss a claim for relief by asserting "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint, however, must contain more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly,* 550 U.S. at 555 (quoting 5

Fed. Prac. & Proc. Civ. § 1216 (3d ed.)).

The Court will "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, the Court will not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *see also Iqbal*, 556 U.S. at 679. In addition, a court "cannot assume any facts necessary to [a plaintiff's] . . . claim that they have not alleged." *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1035 (9th Cir. 2005). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### III. Federal Claims

Plaintiffs raise four civil rights violations under 42 U.S.C. § 1983: (1) Plaintiff Alec Campbell alleges excessive force "against the individual Defendants" based on a July 21, 2018 encounter with CCSO officers; (2) inadequate training against Defendant Cochise County; (3) supervisor liability against Defendant Cochise County Sheriff Mark Dannels; (4) substantive due process and equal protection claims against "Defendants, excluding the State . . . and DCS." (Doc. 15 ¶¶ 141-60.)

A. Excessive-Force Claim Under Count Eleven

The Campbells argue Plaintiffs cannot show they committed any actions under state law in the July 2018 encounter with Alec Campbell because their actions constituted private conduct "which is not actionable as a Section 1983 offense." (Doc. 24 at 10-11; Doc. 43 at 5-6.) The Court agrees. Private conduct is not actionable under § 1983. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). To act under state law, a defendant's actions must in some way relate to the performance of their official duties; mere employment by a governmental entity is not enough. *Van Ort v. Est. of Stanewich*, 92 F.3d 831, 838 (9th Cir. 1996) (off-duty officer "acted neither within his scope of

authority nor under pretense of law" when he broke into a house). Plaintiffs do not specifically allege what actions from the police officers constituted excessive force nor do they address how the Campbells had anything to do with the officers' behavior. Furthermore, Plaintiffs do not allege the Campbells were on duty in July 2018 when police responded and arrested Alec, nor do they allege facts suggesting the Campbells acted in relation to their official duties or within the scope of their authority as government employees. Therefore, the Court dismisses the § 1983 excessive-force claim against the Campbells without prejudice.

### B. Inadequate Training and Supervisor Liability Claims Under Count Eleven

Next, the Campbells argue the inadequate-training theory and supervisor-liability theory do not apply to them. (Doc. 24 at 10-11.) Although Plaintiffs allege these civil rights violations are "against all defendants" in their top heading for the § 1983 counts, Plaintiffs later clarify the inadequate-training and supervisor-liability claims do not apply to the Campbells. Therefore, the Court need not address these claims, as the defendants named in Plaintiff's second and third civil rights claims under Count Eleven have not moved to dismiss these claims.

### C. Substantive Due Process and Equal Protection Claims Under Count Eleven

Lastly, the Campbells argue Plaintiffs' claim asserting substantive due process and equal protection violations "fails to identify any conduct of a particular defendant that caused any specific injury of Plaintiffs." (Doc. 24 at 11.) Plaintiffs do not dispute this and simply respond that they "seek leave to amend the FAC to the extent the Court is inclined to dismiss their claims pursuant to 42 U.S.C. § 1983 as any purported deficiencies can be cured by pleading in the alternative." (Doc. 37 at 12.) Plaintiff's FAC alleges Defendants, "while acting under color of law, violated the rights guaranteed to Plaintiffs by the Due Process and Equal Protection Clauses" and "deprived Plaintiffs of their right to substantive due process as a result of the acts and omissions alleged herein." (Doc. 15 ¶ 106.) Because it is unclear what specific acts and omissions Plaintiffs are referring to and Plaintiffs appear to merely recite the elements in a conclusory fashion, the Court dismisses the substantive-

due-process claim and equal-protection claim without prejudice.

**IV. Supplemental Jurisdiction over State-Law Claims**

After dismissal of the § 1983 claims, the only claims remaining against the Campbells are twelve state-law claims. No federal claims were filed against the State. Because the non-Campbell individual defendants and Defendant Cochise County did not file a motion to dismiss, Plaintiffs' claims alleged against those defendants remain pending. After considering the motions and nature of this action, the Court ordered all parties to file a written notice demonstrating good cause for why this Court should or should not exercise supplemental jurisdiction over the state-law claims. (Doc. 47.) Plaintiffs argue this Court should decline to exercise supplemental jurisdiction because their "state-law claims raise both novel and complex issues of state law that predominate over their § 1983 claims."[1] (Doc. 48 at 2.) Specifically, Plaintiffs point to Arizona H.B. 2446 and A.R.S. § 12-514, which may or may not bar some of Plaintiffs' claims, and argue a state court should resolve this issue because the state-law claims involve "statutory construction or interpretation and state case law analysis." *See Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690 (9th Cir. 2009). (Doc. 48 at 2.) The State argues the court may decline to exercise supplemental jurisdiction because Plaintiffs' twelve state-law claims substantially predominate over the four federal civil rights claims and "[n]o state appellate court has issued any binding precedent" addressing Plaintiff's attempt to revive potentially time-barred claims under A.R.S. § 12-514. (Doc. 51 at 2.)

In contrast, the Campbells argue this Court should exercise supplemental jurisdiction because "all of Plaintiffs' claims arise from the same nucleus of operative facts" and keeping all claims would be "most efficient" because "severing and remanding the state-law claims would require duplicative discovery and trial involving the same facts, issues, witnesses, and evidence." (Doc. 49 at 1-2.) They also argue "none of the state law claims raise novel or complex issues of Arizona law" and "the state law claims do not

---

[1] Plaintiffs also argued in their response to the motion to dismiss that this Court should "certify to the Arizona Supreme Court the question of whether the legislature intended for the revised A.R.S. § 12-514 to extend the time to file or serve a notice of claim." (Doc. 37 at 6.) The Court declines to do so.

substantially predominate over the Section 1983 claims." (Doc. 49 at 8-10.) The remaining defendants agree and join the Campbells' response. (Doc. 50; Doc. 52.)

"In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Claims form part of the "same case or controversy" under § 1367(a) when they "derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding." *Arroyo v. Rosas*, 19 F.4th 1202, 1209 (9th Cir. 2021) (internal citation omitted). However, a district court has the discretion to decline to exercise supplemental jurisdiction if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). "While discretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367(c), it is informed by the . . . values of economy, convenience, fairness, and comity." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (internal quotation marks and citation omitted). Although a district court need not explain its reasons for declining supplemental jurisdiction under § 1367(c)(1)-(3), *San Pedro Hotel Co. v. City of L.A.*, 159 F.3d 470, 478 (9th Cir. 1998), courts have been encouraged to do so to facilitate potential appellate review, *see, e.g.*, *Exec. Software N. Am., Inc. v. U.S. Dist. Ct. for Cent. Dist. of California*, 24 F.3d 1545, 1561 (9th Cir. 1994), *overruled on other grounds by California Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).

Here, the Court finds there is insufficient Arizona case law interpreting A.R.S. § 12-514 for the Court to evaluate whether § 12-514 bars any of Plaintiffs' claims, without intruding on state sovereignty. In 2019, the Arizona Legislature passed H.B. 2446 and

amended A.R.S. § 12-514. *See* 2019 Ariz. Sess. Laws, Ch. 259. Section 12-514 extended the statute of limitations and allowed certain civil actions arising from sexual conduct or sexual contact committed against minors to be revived. There is no binding precedent interpreting this statute;[2] therefore, this Court would be required to interpret state law to determine whether several of Plaintiffs' claims are barred by § 12-541. As the Supreme Court has explained, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Danam v. Arizona Bd. of Educ.*, No. CV-20-02489-PHX-MTL, 2021 WL 3511133, at *5 (D. Ariz. Aug. 10, 2021) (declining to exercise supplemental jurisdiction where district court would need to analyze and interpret Arizona Constitution and a statute of limitations).

The FAC alleges the Campbells committed various acts involving sexual conduct or contact against minor Plaintiffs including: forcing Plaintiffs to perform sexual acts on their siblings; touching Plaintiffs' private parts; hitting Plaintiffs' private parts with various objects; and forcing Plaintiffs to masturbate in front of their other siblings when Plaintiffs reached their teenage years. (Doc. 15 ¶¶ 27-31.) This case is factually complex and spans a period of approximately twelve years during which numerous acts of abuse are alleged to have occurred. (Doc. 15 ¶¶ 27-45.) Although some of Plaintiffs' allegations appear to be time-barred at first glance, a generous interpretation of § 12-514 may allow some of Plaintiffs' state-law claims to proceed.[3] Because this issue is novel and may strongly affect

---

[2] The parties cite no cases interpreting this statute in their motions to dismiss and the Court has only found unpublished cases citing this statute. Notably, there is a case currently pending at the Arizona Court of Appeals seemingly dealing with similar arguments and the interpretation of this statute. *Doe v. Ariz. Bd. of Regents*, No. 1 CA-CV 21-0509 (filed Sept. 7, 2021, appealing trial court order in CV 2020-017426, 2021 WL 2561534 (Ariz. Super. June 09, 2021)).

[3] Plaintiffs rely on the following language from § 3(B) of H.B. 2446 to rebut potentially time-barred claims: "Notwithstanding any other law, a cause of action for damage described in subsection A, paragraph 1 of this section that involves sexual conduct or sexual contact and that would be time barred under section 12-514, Arizona Revised Statutes, as added by this act, or that would otherwise be time barred because of an applicable statute of limitations, a claim presentation deadline or the expiration of any other time limit is revived and may be commenced before December 31, 2020." (Doc. 38 at 3-6, 8-9.)

state public policy, it is better suited for resolution by the state courts and the Court declines supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(1); *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 927 (9th Cir. 2001) (district court did not abuse discretion when declining supplemental jurisdiction over claim raising issue of first impression as to how state statute should be applied); *Bar K, LLC v. United States*, No. CV 19-06-BU-BMM, 2021 WL 3677835, at *5 (D. Mont. Aug. 19, 2021) (concluding novel, political, or strong public policy issues better suited for state courts); *see also Daghlawi v. Juilin Hung*, No. CV-19-05824-PHX-DWL, 2020 WL 224362, at *1 (D. Ariz. Jan. 15, 2020) ("[C]onsiderations of federalism and comity are best served by allowing Arizona state courts to address state-law claims.").

Furthermore, even if the § 1983 claims derive from the same nucleus of operative facts as the state-law claims, the Court also concludes the state-law claims substantially predominate over the § 1983 claims. *See* 28 U.S.C. § 1367(c)(2). Specifically, the state-law claims predominate over the § 1983 claims in terms of proof, the scope of the issues raised, and the comprehensiveness of the remedy sought. The twelve state-law claims mostly involve all four Plaintiffs against all Defendants. (Doc. 15 at 16-43.) In contrast, the § 1983 claims are much narrower: the excessive-force claim involves only Plaintiff Alec Campbell and relates to a singular incident that occurred on July 21, 2018 (Doc. 15 at 36-38); the inadequate-training claim is only alleged against Defendant Cochise County and relates to Cochise County's training program and awareness of the alleged events (Doc. 15 at 38-39); and the supervisor-liability claim is alleged only against Defendant Mark Dannels and relates to his duty to provide certain training to CCSO employees and officials. (Doc. 15 at 39-40.) And, as stated above, it is unclear what specific acts and omissions Plaintiffs are referring to with respect to their substantive due process and equal protection claims, which they allege only against the individual defendants and Cochise County (i.e., not against the State). The Court acknowledges some overlap between the state-law and § 1983 claims during discovery and possibly at trial, but finds the state-law claims are much broader in scope and Defendants will not be unduly prejudiced by the

remand of the state-law claims at this stage, given this case is still in the early pre-discovery stage.

Therefore, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims under § 1367(c)(1) and (2).

**V. Leave to Amend Complaint**

Plaintiffs have requested leave to file a Second Amended Complaint. (Doc. 48 at 2.) "Rule 15 advises the court that 'leave shall be freely given when justice so requires,'" and the Ninth Circuit has emphasized that "[t]his policy is 'to be applied with extreme liberality.'" *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir.2001)). In deciding whether justice requires leave to amend, courts consider: "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) (citing *Foman v. Davis*, 371 U.S. 178, 182, (1962)). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Cap.*, 316 F.3d at 1052. (emphasis omitted). Here, the Court finds Plaintiffs' request is made in good faith, is not futile, and will not result in undue prejudice to Defendants. Therefore, Plaintiffs are granted leave to amend their § 1983 claims.

Accordingly,

**IT IS ORDERED:**

1. The Campbell's Motion to Dismiss (Doc. 24) is **granted** in-part and **denied** in-part.
2. Plaintiffs' "First Civil Rights Claim—As Applied to Alec Campbell Only (Excessive Force—State Official and Peace Officer Liability)" is **dismissed** without prejudice with respect to Defendants Monica and Brian Campbell.
3. Plaintiffs' "Fourth Civil Rights Claim (Substantive Due Process and Equal Protection)" in Count Eleven is **dismissed** without prejudice.

4. Plaintiffs are granted leave to amend their civil-rights claims brought in Count Eleven pursuant to 42 U.S.C. § 1983. Plaintiffs shall file their Second Amended Complaint on or before Thursday, March 17, 2022.

5. The Court declines to exercise supplemental jurisdiction over counts One, Two, Three, Four, Five, Six, Seven, Eight, Nine, Ten, Twelve, and Thirteen in Plaintiff's First Amended Complaint (Doc. 15) and remands those counts to the Cochise County Superior Court.

6. The Clerk of Court shall **mail** a certified copy of this Order to:

> Amy Hunley
> Cochise County Clerk of Court
> Cochise County Superior Court
> P.O. Box CK
> Bisbee, Arizona 85603

7. The State's Motion to Dismiss (Doc. 26) is denied as moot and the State is dismissed and terminated from this action.

Dated this 15th day of February, 2022.

Honorable Scott H. Rash
United States District Judge