**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alec Campbell, et al., | No. CV-21-00002-TUC-SHR |
| Plaintiffs, | **Order Re: Motions to Dismiss and Motion for Reconsideration** |
| v. | |
| Cochise County, et al., | |
| Defendants. | |

Pending before the Court are two motions to dismiss: one filed by Defendants Brian and Monica Campbell ("Campbell Defendants") (Doc. 64), and one filed by Cochise County ("the County"), Sheriff Mark Dannels, and Sergeant Louie Tartaglia ("County Defendants") (Doc. 60). Also pending is the Campbell Defendants' Motion for Reconsideration (Doc. 77).

Plaintiffs Alec, Mahliya, Kyle, and Brandon Campbell assert various civil rights violations under 42 U.S.C. § 1983 and a claim for punitive damages against Defendants. (Doc. 59.) Plaintiffs allege eighteen counts against Campbell Defendants, one count against Defendant Dannels, one count against Defendant Tartaglia, and one count against the County. (*Id.*) Both motions to dismiss are brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 60 at 2; Doc. 64 at 2.) For the reasons below, the Campbell Defendants' Motion to Dismiss is granted, the County Defendants' Motion to dismiss is granted in-part and denied in-part, and the Campbell Defendants' Motion for Reconsideration is denied.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The following facts are derived from Plaintiff's Second Amended Complaint ("SAC").  The Campbells fostered all four Plaintiffs between 2006 and 2008 and adopted all of them around 2008.  (Doc. 59 ¶¶ 23–24.)  In April 2009, the Cochise County Sheriff's Office ("CCSO") hired Defendant Monica Campbell as a Dispatch Supervisor and she "was responsible for receiving, supervising, and responding to 911 calls."  (*Id.* ¶ 29.)  In August 2015, the State of Arizona Department of Child Safety ("DCS") hired Defendant Brian Campbell as a Child Safety Specialist, where his duties included "assessing child safety and risk for the most vulnerable children in Arizona, including investigating and reporting suspected child abuse, neglect, and/or maltreatment."  (*Id.* ¶¶ 26, 28.)

Plaintiffs allege:

> Since the time Plaintiffs were each respectively placed in the Campbells' house as foster children and subsequently adopted, [the Campbells] systematically physically, sexually, emotionally, and psychologically abused and tortured them.
>
> Such acts include, but are not limited to, sexual abuse, child abuse, domestic assault, assault and battery, aggravated assault and battery, defamation, public humiliation, intimidation, depriving Plaintiffs of food and water, threatening to kill Plaintiffs, and prohibiting Plaintiffs from bathing or showering for long periods of time.

(Doc. 59 ¶¶ 32–33.)

Plaintiffs allege the Campbells "abused their respective positions within DCS and the CCSO."  (Doc. 59 ¶¶ 34-35.)  Plaintiffs allege the "CCSO is responsible for responding to and investigating reports of child abuse and neglect, yet routinely fails and/or refuses to investigate or bring criminal charges when the abusers are friends, family, and/or fellow colleagues, and did so in this case, as [the Campbells] were fellow friends and colleagues of the CCSO, and were given free rein by the CCSO to abuse and neglect Plaintiffs."  (*Id.* ¶ 40.)  Specifically, Plaintiffs allege the "CCSO deliberately and routinely failed and/or refused to execute search warrants, adequately preserve records and other evidence, assign proper personnel to investigate reports of abuse and neglect, and instructed deputies to

intentionally ignore Plaintiffs' reports of abuse and neglect." (*Id.* ¶ 41.)

Plaintiffs also allege CCSO employees:

- "Conspir[ed] with [the Campbells] by allowing them to abuse Plaintiffs and by subsequently failing to report, investigate, or substantiate such abuse";
- "Fail[ed] to enact, provide, and/or follow proper practices, policies, and procedures in their individual and/or official capacities to protect Plaintiffs, including assigning 'friends' and colleagues to investigate Plaintiffs' reports of abuse and neglect";
- "Act[ed] with willful, wanton, and deliberate indifference to the basic needs and rights of Plaintiffs"; and
- "Engag[ed] in the widespread failure to properly report, investigate, and substantiate clear and convincing indications of child abuse, neglect, and maltreatment of Plaintiffs and other children in similar situations throughout Cochise County and the State of Arizona." (Doc. 59 ¶ 42.)

Plaintiffs allege several specific dates of abuse reports and inadequate investigations. (Doc. 59 ¶¶ 43–47.) This includes Mahliya Campbell's February 2012 statement to "DCS Child Safety Specialist George Watkins that Plaintiffs would be 'popped in the mouth with a hand or smacked in the back of the head. Sometimes [we] get spanked with a belt." (*Id.* ¶ 43.) Plaintiffs also allege there is a March 2012 report where school officials reported suspected abuse to the DCS hotline due to Mahliya's bruised face, and a December 2016 report where Alec informed school officials that he and Mahliya "had been forced by their parents to stand naked in front of their siblings while being videotaped, and that they had been choked and subjected to death threats by their parents." (*Id.* ¶¶ 44–47.)

Plaintiffs allege that in July 2018, "Brian Campbell punched Alec in the face, threw him to the ground, and assaulted him with a Taser while sitting on his chest, rendering Alec helpless." (Doc. 59 ¶ 50.) Alec threatened to kill Brian and himself out of desperation because he knew he would be arrested and taken away from the home. (*Id.* ¶ 52.) After

1    Monica Campbell called the police; CCSO Deputy Jordan Collins responded, saw footage

2    from surveillance cameras in the Campbell home, and arrested Brian for domestic assault.

3    (*Id.* ¶¶ 54–55.)   In September 2018, Collins executed a search warrant to obtain the

4    surveillance footage from the July 2018 incident.  (*Id.* ¶ 56.)  He was unable to obtain the

5    footage because it had been destroyed by then, but he had recorded the footage with his

6    mobile device when he responded to the call in July.  (*Id.* ¶¶ 56–57.)

7        In September 2018, DCS terminated Brian Campbell, and in May 2019, the

8    Campbell Defendants were criminally charged with child abuse and other crimes related

9    to Plaintiffs' allegations.  (Doc. 59 ¶¶ 58, 60, 63.)   In March 2020, Monica Campbell

10   resigned from the CCSO and the Campbells consented to the severance of their parental

11   rights as to Plaintiffs a month later.  (*Id.* ¶¶ 61-62.)  In January 2021, the Campbells were

12   sentenced to three years in prison based on the May 2019 criminal charges.  (*Id.* ¶ 63.)

13       In November 2020, Plaintiffs filed a complaint in Cochise County Superior Court,

14   which Defendants Cochise County and Mark Dannels removed to this Court, arguing

15   federal question jurisdiction applied because of Plaintiffs' 42 U.S.C. § 1983 allegations,

16   and supplemental jurisdiction applied to the state-law claims.  (Doc. 1 at 1-3; Doc. 1-1 at

17   1–2; Doc 1-2 at 1–3.)  The remaining Defendants joined in and consented to the removal.

18   (Doc. 8; Doc. 10; Doc. 11.)

19       In March 2021, the Campbell Defendants and the State of Arizona moved to dismiss

20   all counts against them in the First Amended Complaint.  (Docs. 24, 26.)  The Campbell

21   Defendants argued, among other things, that Plaintiffs had failed to state a § 1983 claim.

22   (Doc. 24.)  In February 2022, the Court dismissed the § 1983 excessive-force claim against

23   the Campbell Defendants without prejudice because "Plaintiffs [did] not allege the

24   Campbells were on duty in July 2018 when police responded and arrested Alec, nor [did]

25   they allege facts suggesting the Campbells acted in relation to their official duties or within

26   the scope of their authority as government employees."  (Doc. 53 at 8–9.)  The Court also

27   dismissed Plaintiffs' § 1983 substantive due-process claim "because it is unclear what

28   specific acts and omissions Plaintiffs are referring to and Plaintiffs appear to merely recite

1  the elements in a conclusory fashion." (*Id.* at 9–10.) Because all federal law claims were

2  dismissed against the Campbell Defendants and no federal claims were filed against the

3  State, the Court declined to exercise supplemental jurisdiction over Plaintiffs' twelve state-

4  law claims. (*Id.* at 10–14.) The Court gave Plaintiffs leave to amend their § 1983 claims.

5  (*Id.* at 14.)

6      In April 2022, Plaintiffs filed their SAC and raised eighteen counts against

7  Campbell Defendants, one count against Defendant Dannels, one count against Defendant

8  Tartaglia, and one count against the County.[1] (Doc. 59.) The County Defendants

9  subsequently filed a motion for reconsideration asking the Court to reconsider its decision

10  to decline supplemental jurisdiction over the state-law claims because Plaintiffs had now

11  filed more federal claims than state-law claims. (Doc. 77.)

12      The Campbell Defendants and the County Defendants also subsequently moved to

13  dismiss Plaintiffs' claims pursuant to Rule 12(b)(6).[2] (Doc. 60 at 2; Doc. 64 at 2.)

14  Campbell Defendants argue Counts One through Eighteen of the SAC fail to state a claim

15  upon which relief can be granted because the SAC only alleges private goals and actions,

16  and Plaintiffs have not alleged enough facts to plausibly meet the other tests that can

17  establish state action. (Doc. 64 at 4–12.) The County Defendants argue the individual-

18  capacity claims against Dannels and Tartaglia fail to state a claim because the SAC does

19  not plausibly allege Dannels and Tartaglia played any role in Plaintiffs' alleged injuries

20  and, even if they had, the claims should be dismissed because qualified immunity applies.

21  (Doc. 60 at 7–9; Doc. 80 at 4–10.) The County Defendants also argue the official capacity-

22  claims against Dannels and Tartaglia and the claims against the County should be

---

[1]Plaintiffs also raised claims against the State of Arizona and Mike Faust—Director
of the Arizona DCS. (Doc. 59 ¶¶ 4–5.) However, after the SAC was filed, Plaintiffs
voluntarily dismissed the State of Arizona and Mike Faust. (Docs. 74, 84.)

[2]Plaintiffs and Defendants requested oral argument. (Doc. 75 at 1; Doc. 76 at 1;
Doc. 60 at 1; Doc. 64 at 1.) The Court finds oral argument will not aid in resolution of the
issues raised and, therefore, denies this request. *See* LRCiv 7.2(f); Fed. R. Civ. P. 78(a);
*Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) ("[A] district court can decide the
issue without oral argument if the parties can submit their papers to the court."); *see also
Bach v. Teton Cnty. Idaho*, 207 F. App'x 766, 769 (9th Cir. 2006) ("Due process does not
require the district court to hold oral argument before ruling on pending motions.").

1    dismissed because Plaintiff has not properly alleged municipality liability. (Doc. 60 at 9–

2    12.) Lastly, County Defendants argue Count Twenty-Three should be dismissed because

3    Plaintiffs cannot, as a matter of law, recover punitive damages against the County or

4    individuals sued in their official capacity. (*Id.* at 12–13.)

5        **II. MOTION TO DISMISS STANDARD**

6        Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, "[a] pleading that

7    states a claim for relief must contain . . . a short and plain statement of the claim showing

8    that the pleader is entitled to relief." While Rule 8 does not require detailed factual

9    allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me

10   accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under Rule 12(b)(6), a party

11   may move to dismiss a claim for relief by asserting "failure to state a claim upon which

12   relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient

13   factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*.

14   (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial

15   plausibility when the plaintiff pleads factual content that allows the court to draw the

16   reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The

17   complaint, however, must contain more than "a statement of facts that merely creates a

18   suspicion [of] a legally cognizable right of action." *Twombly,* 550 U.S. at 555 (quoting 5

19   Fed. Prac. & Proc. Civ. § 1216 (3d ed.)).

20       The Court will "accept factual allegations in the complaint as true and construe the

21   pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire

22   & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, the Court will not

23   accept as true unreasonable inferences or conclusory legal allegations cast in the form of

24   factual allegations. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *see also

25   Iqbal*, 556 U.S. at 679. In addition, a court "cannot assume any facts necessary to [a

26   plaintiff's] . . . claim that they have not alleged." *Jack Russell Terrier Network of N. Cal.

27   v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1035 (9th Cir. 2005). "Determining whether a

28   complaint states a plausible claim for relief [is] . . . a context-specific task that requires the

1   reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at

2   679.[3]

3   **III. CLAIMS AGAINST THE CAMPBELL DEFENDANTS (Counts 1–18)**

4   The Campbell Defendants argue Counts One through Eighteen of the SAC should

5   be dismissed because the SAC only alleges private goals and private actions—not actions

6   performed under the color of state law.  (Doc. 64 at 2–12.)  Furthermore, the Campbell

7   Defendants argue Plaintiffs have not alleged enough facts to plausibly meet the *Naffe* test,

8   joint action test, or governmental nexus test.  (*Id.* at 4–12.)  In response, Plaintiffs argue

9   the Campbell Defendants "operated under the color of state law in the lives of Plaintiffs"

10  and they have alleged enough facts in the SAC to meet each of the tests referenced by the

11  Campbell Defendants.  (Doc. 76 at 3.)

12  "Section 1983 is a 'vehicle by which plaintiffs can bring federal constitutional and

13  statutory challenges to actions by state and local officials.'"  *Naffe v. Frey*, 789 F.3d 1030,

14  1035 (9th Cir. 2015) (quoting *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006)).

15  Specifically, § 1983 provides:

16              [e]very person who, under color of any statute, ordinance,
                regulation, custom, or usage, of any State or Territory or the
17              District of Columbia, subjects, or causes to be subjected, any
                citizen of the United States or other person within the
18              jurisdiction thereof to the deprivation of any rights, privileges,
                or immunities secured by the Constitution and laws, shall be
19              liable to the party injured in an action at law, suit in equity, or
20              other proper proceeding for redress.

21  To obtain relief under § 1983, a plaintiff must demonstrate the defendant acted under the

22  color of state law and deprived him of "rights secured by the Constitution or federal

23  statutes."  *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986); *see also Benavidez*

24  *v. Cnty. of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021).  There is no rigid formula for

25  _____

26  [3]Plaintiff cites *Conley v. Gibson*, 355 U.S. 41 (1957), for the proposition that "a
    complaint should not be dismissed for failure to state a claim unless it appears beyond
27  doubt that the plaintiff can prove no set of facts in support of this claim which would entitle
    him to relief."  (Doc. 76 at 5.)  This case predates *Iqbal* and *Twombly* and is no longer
28  applicable.

determining whether a defendant acted under the color of state law, *Anderson v. Warner*, 451 F.3d 1063, 1068 (9th Cir. 2006), so it is a fact-intensive inquiry, *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1167 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 337 (2021).  Nevertheless, a defendant acts under color of state law where he has "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic,* 313 U.S. 299, 326 (1941)).

As explained below, the Court concludes the SAC fails to allege sufficient facts to plausibly allege the Campbell Defendants acted under color of state law for Counts One through Eighteen.

**A. *Naffe* Test**

The Ninth Circuit Court of Appeals has held off-duty government employees act under the color of state law when they (1) purport or pretend to act under color of law, (2) their pretense of acting in the performance of their duties had the purpose and effect of influencing other's behaviors, *and* (3) the harm inflicted "related in some meaningful way either to the officer's governmental status or to the performance of [their] duties."  *Naffe*, 789 F.3d at 1037.  If the government employees do not meet these criteria, then they acted as private citizens.  *See Van Ort v. Est. of Stanewich*, 92 F.3d 831, 833–36 (9th Cir. 1996) (no action under color of law where off-duty officer returned to home where police search had taken place the day before, forced his way in, and tortured residents); *see also Gritchen v. Collier*, 254 F.3d 807, 812–13 (9th Cir. 2001); *Huffman v. Cnty. of Los Angeles*, 147 F.3d 1054, 1058 (9th Cir. 1998).  In other words, "a government employee does not act under color of state law when he pursues private goals via private actions."  *Naffe*, 789 F.3d at 1037.

Without citation to any authority, Plaintiffs claim: "A § 1983 claim against an off-duty police officer generally presents an automatic dispute of fact."  (Doc. 76 at 6.)  Case law, however, suggests otherwise.  *See e.g.*, *Hyun Ju Park v. City & Cnty. of Honolulu*, 952 F.3d 1136, 1140–41 (9th Cir. 2020) (affirming dismissal of § 1983 claim based on

failure to state a claim); *Naffe*, 789 F.3d at 1037 (same).

Here, Plaintiffs do not allege Defendants were on duty when any of the alleged civil rights violations occurred. That is, Plaintiffs do not allege the Campbell Defendants committed unconstitutional behaviors during their work hours or at their places of employment. Instead, Plaintiffs seemingly claim the Campbell Defendants purported to act under color of law by "routinely tout[ing] their government employment to instill subservience and helplessness" during non-working hours. (Doc. 76 at 6.) Plaintiffs' only factual support for this argument is ¶ 174 of the SAC—a statement alleging one of the *Plaintiffs* said "Monica Campbell *is* the police."[4] The SAC, however, does not allege what statements, if any, the Campbell Defendants made to Plaintiffs and if those statements were made to facilitate the alleged unconstitutional behavior. This is insufficient to plausibly allege the Campbell Defendants purported or pretended to act under color of law.

Furthermore, the SAC does not plausibly allege the harms inflicted "related in some meaningful way either to the officer's governmental status or to the performance of [their] duties." *See Naffe*, 789 F.3d at 1037. There are no allegations in the SAC of the Campbell Defendants using their badges, titles, or other state resources to invoke their authority as government employees to facilitate their allegedly unconstitutional behavior. It is undisputed the Campbell Defendants were government employees at least during some portion of the alleged abuse—Brian Campbell was a DCS Child Safety Specialist from August 2015 to September 2018, and Monica Campbell was a 911 dispatcher from April 2009 to March 2020. (Doc. 59 ¶¶ 26, 58, 61.) But, even as governmental officials, their alleged wrongful actions are not taken under color of state law if those actions are not in any way related to the performance of their duties as government officials. Because the SAC simply assumes in a conclusory fashion that the Campbell Defendants abused their government authority to inflict unconstitutional harms, the SAC fails to plausibly allege the Campbell Defendants acted under color of law under the *Naffe* test.

**B. Other tests**

---

[4]This statement is repeated multiple times throughout the SAC.

Private actors are presumed to be outside the scope of § 1983 as not acting under color of state law. *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011). However, a private actor may act under the color of law if the alleged infringement of rights can be said to be "fairly attributable to the [government]." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003). "The Supreme Court has developed four different tests that 'aid . . . in identifying state action: '(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus.'" *Pasadena Republican Club*, 985 F.3d at 1167 (quoting *Rawson v. Recovery Innovations, Inc*., 975 F.3d 742, 747–48 (9th Cir. 2020), *cert. denied*, 142 S. Ct. 69 (2021)). "[S]atisfaction of any one test is sufficient to find state action . . . ." *Id.* (internal quotation marks and citation omitted).

Here, Plaintiffs rely exclusively on the joint action test and the governmental nexus test.

### 1. Joint Action Test

To be engaged in a joint action, a private party must be a "willful participant" with the State or its agents in an activity which deprives others of constitutional rights. *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). The joint action test is met if "the government has so far insinuated itself into a position of interdependence with a private entity that the private entity must be recognized as a joint participant in the challenged activity." *Pasadena Republican Club*, 985 F.3d at 1167 (quoting *Brunette v. Humane Soc'y of Ventura Cnty.*, 294 F.3d at 1210 (9th Cir. 2002)). A private party is liable under this theory, however, only if its particular actions are "inextricably intertwined" with those of the government. *Mathis v. Pac. Gas & Elec. Co.,* 75 F.3d 498, 503 (9th Cir. 1996); *Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989) (necessitating a showing of "substantial cooperation" between the private party and the State). A conspiracy between the State and a private party to violate another's constitutional rights may satisfy the joint action test. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150–52 (1970); *Howerton v. Gabica*, 708 F.2d 380, 383 (9th Cir. 1983); *United Steelworkers v. Phelps Dodge*

*Corp.*, 865 F.2d 1539, 1546–47 (9th Cir. 1989) (en banc).

Plaintiffs argue the Campbell Defendants "engaged in joint activity with other State actors" because there was a conspiracy between the Campbell Defendants and the County Defendants.  (Doc. 76 at 7–11.)  Specifically, Plaintiffs argue the Campbell Defendants advertised themselves to Plaintiffs as the police and worked with "fellow State actors (colleagues/friends of Defendants)" to "knowingly and/or willfully disregard Plaintiffs' safety and well-being."  (Doc. 76 at 9.)  According to Plaintiffs, the Campbell Defendants used their positions as government employees to "explicitly intimidate Plaintiffs, or impliedly to garner deferential treatment by fellow state agents."  (Doc. 76 at 9.)  The Campbell Defendants argue Plaintiffs' Response relies on "unpled allegations" and "the government's acquiescence does not convert [their] actions into those performed under color of law."  (Doc. 79 at 2.)

Construing Plaintiff's pleadings in the light most favorable to them, Plaintiffs' allegations do not establish any substantial cooperation or inextricably intertwined activity between the Campbell Defendants and the County Defendants.  Plaintiffs do not cite, and the Court is unaware of, any portion of their SAC where they alleged the Campbell Defendants used their government authority to explicitly intimidate Plaintiffs or gain deferential treatment from fellow state agents.  Plaintiffs' SAC is vague and does not clearly indicate whether the County Defendants were present during the Campbell Defendants' alleged unconstitutional behavior.  Even if the SAC did allege they were present, there are no allegations of *how* the County Defendants acted or assisted in perpetuating the unconstitutional conduct.  For example, there are no allegations of prior discussions, planning, or coordination between the Campbell Defendants and County Defendants with respect to the alleged unconstitutional behavior.  *See Brunette*, 294 F.3d at 1211–12 (joint planning by law enforcement officials and private parties can support finding of joint action).  Plaintiffs simply argue they pled enough because they alleged a state actor—Defendant Tartaglia—provided substantial assistance to the Campbell Defendants for years by "repeatedly turning a blind eye and allowing the . . . abuse and

neglect of Plaintiffs to continue."  (Doc. 76 at 11; Doc. 59 ¶ 49.)  However, turning a blind eye to abuse is not sufficient to support a § 1983 claim; there need to be allegations plausibly supporting police intervened and aided.  *See Howerton*, 708 F.2d at 383–85 (mere acquiescence by police is not enough for state action but intervention and aid might be). Therefore, the Plaintiffs have not plausibly alleged the joint action test applies.

### 2. Governmental Nexus Test

The governmental nexus test examines "whether 'there is a such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself.'"  *Kirtley*, 326 F.3d at 1095 (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)).  The Ninth Circuit Court of Appeals recently explained the governmental nexus test can be applied similarly to the *Naffe* test.  *See Garnier v. O'Connor-Ratcliff*, 41 F.4th 1158, 1170 (9th Cir. 2022).

Here, Plaintiffs do not meaningfully explain how the governmental nexus test is met.  (Doc. 76.)  They simply argue in a conclusory fashion the facts alleged satisfy the governmental nexus test and cite to *Kirtley*, 326 F.3d at 1092—a case where the Ninth Circuit found the governmental nexus test was *not* met.  (Doc. 76 at 9.)  In any event, for the reasons above, the Court concludes Plaintiffs have failed to allege facts to plausibly support a claim the Campbell Defendants acted under color of law under the governmental nexus test.

Because Plaintiffs have failed to sufficiently allege the Campbell Defendants acted under color of law under any test, they have failed to state a claim under § 1983 against the Campbell Defendants in their individual capacities.  Any official-capacity claims against Brian Campbell are moot because the State of Arizona has been voluntarily dismissed by Plaintiffs.  For the reasons below, the official-capacity claims against Monica Campbell are also dismissed.  Therefore, Counts One through Eighteen are dismissed.

### IV. CLAIMS AGAINST COUNTY DEFENDANTS (Counts 20–22)

Plaintiffs allege Defendants Mark Dannels and Louie Tartaglia are liable under § 1983 in their individual and official capacities for violating the Due process Clause of

1   the Fourteenth Amendment by failing to protect them from a state-created danger.  (Doc.

2   59 ¶¶ 8, 11, 30, 434–469 (Dannels); 12–13, 49, 453–460 (Tartaglia)).[5]

3   **A.  Individual-Capacity Claims Against Dannels and Tartaglia**

4   Defendants Dannels and Tartaglia argue the individual-capacity claims against them

5   should be dismissed because the SAC is "formulaic and conclusory" and does not plausibly

6   allege they "personally played any role in Plaintiffs' alleged injuries."  (Doc. 60 at 9; Doc.

7   75 at 1.)  They also argue they should be dismissed from this case because qualified

8   immunity applies.  (Doc. 60 at 7–9; Doc. 75 at 1.)

9   In response, Plaintiffs argue they sufficiently alleged Defendants Dannels and

10  Tartaglia breached their duty to them and failed to properly investigate or bring criminal

11  charges against the Campbell Defendants, despite knowing of the abuse.  (Doc. 75 at 9.)

12  Plaintiffs also argue dismissal on qualified immunity grounds is generally improper at the

13  pleading stage and "qualified immunity does not encompass Defendants' actions" because

14  Plaintiffs "endured repeated constitutional violations" because Defendants "ignore[ed]

15  known or suspected child abuse."  (Doc. 75 at 6–8.)

16  In their Reply, Defendants Dannels and Tartaglia argue qualified immunity can be

17  considered at the motion to dismiss stage and the claims against them should be dismissed

18  because Plaintiffs "have failed to show clearly established law that [they] violated

19  Plaintiffs' fourteenth amendment rights."  (Doc. 80 at 4–10.)

20  Contrary to Plaintiffs' assertion, qualified immunity may be decided on a Rule

21  12(b)(6) motion.  *See e.g.*, *B & L Prods., Inc. v. 22nd Dist. Agric. Ass'n*, 394 F. Supp. 3d

22  1226, 1238 (S.D. Cal. 2019) (granting motion to dismiss against individual defendants

23  based on qualified immunity where plaintiffs pointed to no precedent and court was unable

24  to locate any on its own to show a clearly established right); *A.C. v. Cortez*, 398 F. Supp.

25  3d 748, 753 (S.D. Cal. 2019), aff'd , No. 19-55895, 2021 WL 4705511 (9th Cir. Oct. 8,

26  _____

[5]Plaintiffs do not adequately explain what portions of Count Twenty and Twenty-
27  One relate to their individual-capacity claims or official-capacity claims.  For purposes of
analysis, the Court will treat Count Twenty as an individual-capacity claim against Dannels
and Count Twenty-One as an individual-capacity claim against Tartaglia.  To the extent
28  any portion of Counts Twenty and Twenty-One refers to an official-capacity claim, the
Court will treat that as relating to Count Twenty-Two—the claim against the County.

2021), supplemented sub nom. *A.C. by & through Park v. Cortez*, 34 F.4th 783 (9th Cir. 2022) (granting motion to dismiss based on qualified immunity because plaintiffs failed to show law was so clearly established that no reasonable person in defendants' position could have believed their conduct was lawful).

"Qualified immunity shields government actors from civil liability under 42 U.S.C. § 1983 if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It "protects 'all but the plainly incompetent or those who knowingly violate the law,'" *Mueller v. Auker*, 576 F.3d 979, 992 (9th Cir. 2009) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)), and it assumes that government actors "do not knowingly violate the law," *Gasho v. United States*, 39 F.3d 1420, 1438 (9th Cir. 1994). Because "[i]t is 'an *immunity from suit* rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Mueller*, 576 F.3d at 992 (*emphasis* in original) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). To that end, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In a § 1983 suit, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. To determine whether qualified immunity applies, courts must consider whether (1) the government official violated the plaintiff's constitutional right and (2) whether that right was clearly established at the time of the events at issue. *Seidner v. de Vries*, 39 F.4th 591, 595 (9th Cir. 2022) (internal citation and quotation marks omitted).

Plaintiffs' sixty-seven page SAC is lengthy, difficult to comprehend, and appears to merely rely on formulaic, conclusory, and vague allegations regarding specific acts or omissions Dannels and Tartaglia committed.[6] The SAC could be denied on that basis

---

[6]Plaintiffs repeatedly try to "repeat and incorporate by reference the allegations contained in" different portions of the SAC, making it difficult to comprehend what

alone. *See Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982) ("Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss.").  Nonetheless, even if Plaintiffs had properly alleged Dannels and Tartaglia individually violated their Fourteenth Amendment due process rights, the Court finds Plaintiffs have not met their burden of showing those rights were clearly established at the time of Dannels and Tartaglia's actions/omissions. *See Gordon v. Cnty. of Orange*, 6 F.4th 961, 969 (9th Cir. 2021) (burden on plaintiff to prove right allegedly violated was clearly established at the time of the violation); *Siegert v. Gilley*, 500 U.S. 226, 231 (1991) (courts should resolve legal question of whether there is a clearly established right before allowing discovery).  "[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established."  *Gordon*, 6 F.4th at 969 (quoting *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009)).

Plaintiff argues, without citation to any authority, that "ignoring known or suspected child abuse is a plain violation of the law as well as constitutional rights" and "turning a blind eye to (or aiding in the concealment of) known or suspected child abuse clearly constitutes a rights violation."  (Doc. 75 at 7–8.)  To the extent Plaintiffs cite *L.W. v. Grubbs*, 974 F.2d 119 (9th Cir. 1992), for the proposition that they had a constitutional right to sue state employees who fail to protect them from third-party harm, the Court finds that case distinguishable.  (Doc. 75 at 9–10.)  In *Grubbs*, the Ninth Circuit Court of Appeals found a nurse at a state custodial institution for young male offenders had sufficiently alleged a state-created danger where she alleged her supervisors allowed a known violent inmate to be alone with her unsupervised even though she was led to believe her job would not involve contact with violent inmates when she was hired.  974 F.2d at 120–23.  There, plaintiff alleged defendants had acted in their capacity as state correctional officers when they affirmatively created a dangerous situation by promoting the violent inmate to serve

---

allegations belong to which count.  To conduct a proper analysis, the Court has undertaken a thorough review of the SAC.  But Plaintiff's counsel is warned that attempts to do this in future filings may result in a filing being summarily stricken.

as a "cart boy"—a position for which he was unqualified and which would leave him alone and unsupervised with the plaintiff, despite defendants knowing about the inmate's "extraordinary history of unrepentant violence against women and girls." *Id.* at 121–23. The plaintiff there also alleged defendants knew the inmate was likely to assault a woman if left alone with her, knew she would be alone with the inmate during her rounds, and knew plaintiff would not be prepared to defend herself or avert an attack because, upon hiring, she had not been told she would be left alone with violent offenders. *Id.* That is, the plaintiff there sought to hold defendants liable "for their acts that independently created the opportunity for and facilitated" the assault because defendants "affirmatively created the dangerous situation which resulted in [the] assault." *Id.* at 122. Here, Plaintiffs have not alleged Dannels and Tartaglia placed them in the Campbells' home or took any affirmative actions to create a dangerous situation or facilitate the abuse the Campbells perpetrated on Plaintiffs. Therefore, Plaintiffs' reliance on *Grubbs* is inapposite and Counts Twenty and Twenty-One are dismissed because Plaintiffs fail to state individual-capacity claims against Defendants Dannels and Tartaglia.

### B.  Official-Capacity and Claims Against County

Defendant Cochise County makes three arguments. First, Plaintiffs' SAC fails to plausibly allege a *Monell*-based claim against it because it does not "identify, or even mention, a specific municipal policy, custom, or practice of Cochise County that was the moving force behind the commission of an alleged constitutional wrong." (Doc. 60 at 9–12.) Second, it argues Plaintiffs' SAC "makes conclusory and vague allegations that a lack of training or supervision, or failure to 'implement policies,' allegedly caused a constitutional injury." (*Id.* at 11.) Third, it argues "[e]ven if there were a plausibly alleged basis for *Monell* liability, Plaintiffs do not plausibly allege a constitutional violation by a Cochise County actor necessary to impose *Monell* liability on the County." (*Id.* at 12.)

Plaintiffs argue they sufficiently alleged "detailed facts" for a municipal liability claim under *Monell* by alleging the County "had actual knowledge of the customs and practices that were deliberately indifferent to public safety." (Doc. 75 at 10–11.)

1    Specifically, Plaintiffs argue they allege the County "failed to maintain policies, customs,
2    and practices amounting to a deliberate indifference to the right of innocent people with
3    whom CCSO officers come in contact." (*Id.* at 13.)  According to Plaintiffs, they allege "a
4    systematic, orchestrated operation adhering to the CCSO's 'code of silence,'" "the likely
5    policy and/or practice of the County not to investigate claims made against its own
6    employees," and the "County's longstanding practice of failing and/or refusing to
7    investigate or bring criminal charges when alleged abusers [are] friends, family, and/or
8    colleagues." (*Id.* at 13–14.)

9        A suit against an individual police officer in his official capacity is really a suit
10   against the municipal entity that employs the officer.  *See Kentucky v. Graham*, 473 U.S.
11   159, 165–67 (1985); *Community House, Inc. v. City of Boise*, 623 F.3d 945, 966–67 (9th
12   Cir. 2010).  The liability of a municipality—in this case, the County—under 42 U.S.C.
13   § 1983 is governed by *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  Under *Monell*,
14   a municipality cannot be subjected to liability solely because its agents or employees
15   caused injury to another person.  *Id.*  Rather, a municipal entity may be liable
16   under § 1983 only "when execution of a government's policy or custom, whether made by
17   its lawmakers or by those whose edicts or acts may fairly be said to represent official
18   policy" deprives a citizen of constitutional rights.  *Id.* at 698.  To establish a *Monell* claim
19   against Cochise County, Plaintiffs must prove: "(1) that [they] possessed a constitutional
20   right of which [they were] deprived; (2) that the municipality had a policy; (3) that this
21   policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that
22   the policy is the moving force behind the constitutional violation." *Dougherty v. City of
23   Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of
24   Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).

25       Here, Plaintiffs alleged official-capacity claims against Monica Campbell,
26   Tartaglia, and Dannels.[7]  Because these are simply suits against the County, the Court will

27
28   _____
     [7]To the extent Plaintiffs intended for any allegations in Counts 1-18 to be against
     Monica Campbell in an official capacity, those claims are dismissed as too conclusory and
     formulaic to allege a policy or custom against the County.  *See Ivey*, 673 F.2d at 268
     ("Vague and conclusory allegations of official participation in civil rights violations are

1   address all these claims together.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Graham*, 473
2   U.S. at 167.

3                    1.   Failing to Investigate Child Abuse

4       In the SAC, Plaintiffs allege "Defendant Cochise County implemented policies that
5   allowed incompetent, corrupt, and/or compromised employees to oversee the placement
6   and protection of minors, including Plaintiffs.  Defendant Cochise County, including by
7   and through its policies, insufficiently responded to, ignored, and/or covered up calls or
8   reports of abuse (or reasonably suspected abuse)."  (Doc. 59 ¶ 463.)  Liberally construed,
9   the Court concludes Plaintiffs have sufficiently alleged, at this stage in the litigation,  the
10  County had a policy of failing to investigate child abuse allegations made against County
11  employees, that this policy amounted to a deliberate indifference to Plaintiffs'
12  constitutional rights, and that this policy was the moving force behind the alleged
13  constitutional violations at issue.

14                   2.   Failure to Train

15      A plaintiff may also establish municipal liability by demonstrating the alleged
16  constitutional violation was caused by a failure to adequately train municipal employees.
17  *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–91 (1989); *Garmon v. Cnty. of Los
18  Angeles*, 828 F.3d 837, 846 (9th Cir. 2016).  "A municipality's culpability for a deprivation
19  of rights is at its most tenuous where a claim turns on a failure to train."  *Connick v.
20  Thompson*, 563 U.S. 51, 61 (2011); *see also Benavidez v. Cnty. of San Diego*, 993 F.3d
21  1134, 1153–54 (9th Cir. 2021).  The "inadequacy of police training may serve as the basis
22  for municipal liability under section 1983" if: (1) the training program is inadequate "in
23  relation to the tasks the particular officers must perform"; (2) the municipal officials were
24  deliberately indifferent "to the rights of persons with whom the police come into contact";
25  and (3) the inadequacy of the training must have "actually caused the constitutional
26  deprivation at issue."  *Merritt v. Cnty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989)
27  (quoting *City of Canton*, 489 U.S. at 391) (internal quotation marks omitted).

28  ─────────────────────
    not sufficient to withstand a motion to dismiss.").

The indifference of municipal officials may be shown where, "in light of the duties assigned to specific . . . employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390.  "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 (internal quotation marks and citation omitted). "Satisfying this standard requires proof that the municipality had actual or constructive notice that a particular omission in their training program will cause municipal employees to violate citizens' constitutional rights." *Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 794 (9th Cir. 2016) (en banc) (internal quotation marks, alterations and citations omitted). In order "to demonstrate that the municipality was on notice of a constitutionally significant gap in its training, it is ordinarily necessary for a plaintiff to demonstrate a pattern of similar constitutional violations by untrained employees." *Id.* (internal quotations marks omitted).

In the SAC, Plaintiffs allege Dannels "has for years, upon information and belief, been fully aware of his and the CCSO's deprivation of the public's constitutional rights." (Doc. 59 ¶ 434.)  Specifically, Plaintiffs reference four events: (1) a suit against Dannels related to the suppression and fabrication of evidence in a 2010 Oregon case; (2) the 2016 conspiracy to commit murder charge against a former CCSO deputy; (3) the 2019 death of a mentally ill county inmate; and (4) the 2019 conviction of a county jail chaplain for the rape and sexual assault of inmates.[8]  (*Id.* ¶¶ 435–38)

Plaintiffs also allege the "County and [Dannels] are responsible for supervising their deputies and dispatchers regarding the rights, safety, and protection of the public, including Plaintiffs."  (Doc. 59 ¶ 74.)  They allege the County and Dannels "failed to properly supervise their deputies and dispatchers" and "maintain[ed] long-lasting and widespread policies, practices, or customs that are deliberately indifferent to the rights, safety, and

---

[8]The Court fails to see how any of these examples relate to child abuse or neglect. The "events" are without context, appear random, and are red herrings.  They are irrelevant to establishing a pattern of similar constitutional violations and fail to support any claim the County was deliberately indifferent to child abuse investigations.

protection of the public." (*Id.* ¶¶ 76, 78–79, 81.)  According to Plaintiffs, this failure of supervision has "increase[d] the frequency of cases involving child abuse and neglect." (*Id.* ¶ 85.)  Plaintiffs allege the County and Dannels knew or should have known this failure of supervision would harm the public and the failure "to properly and timely investigate allegations of child abuse and neglect constituted a violation of Plaintiffs' [constitutional] rights."  (*Id.* ¶¶ 83, 87.)  Plaintiffs allege "[i]n view of such knowledge, there was an obvious need to develop policies regarding the supervision of investigations into reports of child abuse and neglect" and they "failed to develop and implement policies to investigate, report, prevent, or minimize instances of child abuse and neglect."  (*Id.* ¶¶ 87, 89.)

The Court finds Plaintiffs' allegations insufficient and conclusory.  *See AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (To adequately plead municipal liability, the complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." (quoting *Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011)).  Plaintiffs set forth virtually no facts supporting their conclusory allegations of a failure-to-train theory.  Plaintiffs also do not specifically allege *how* any deficient training actually caused their constitutional rights to be violated.  Therefore, Plaintiffs have failed to state a claim based on a failure-to-train theory against the County.

## IV. PUNITIVE DAMAGES AGAINST ALL DEFENDANTS (Count 23)

Defendant Cochise County argues Plaintiffs' claim against it for punitive damages must be dismissed because municipalities are immune from punitive damages in § 1983 cases.  (Doc. 60 at 12–13.)  Defendants Dannels and Tartaglia argue there are no factual allegations plausibly alleging they possessed the requisite mental state to support an award of punitive damages.  (*Id.*)  Plaintiffs fail to respond to any of these arguments.  (Doc. 75.)

Municipalities and state officials sued in their official capacity are immune from punitive damages.  *Mitchell v. Dupnik,* 75 F.3d 517, 527 (9th Cir. 1996); *see also Olivier v. Baca*, 913 F.3d 852, 861 (9th Cir. 2019) (recognizing punitive damages are not available in § 1983 claims against public officials in their official capacity).  Therefore, Plaintiffs

cannot proceed on a punitive damages theory against any defendant sued in their official capacity or the County.  Because there are no remaining defendants sued in their individual capacity, Count Twenty-Three is dismissed.

## V. MOTION FOR RECONSIDERATION

 After the Motions to Dismiss were fully briefed, the Campbell Defendants filed a Motion for Reconsideration (Doc. 77) of the Court's February 16, 2022 Order (Doc. 53), which remanded all state-law claims asserted by Plaintiffs in their First Amended Complaint.   The Campbell Defendants argue: "Since that Order was entered, the circumstances of this case have changed dramatically in that Plaintiffs have expanded their federal claims from a single count sounding in 42 U.S.C. § 1983, to twenty-two (22) such counts in their [SAC]."  (Doc. 77 at 1–2.)  They also argue: "Because the federal claims now predominate over the state law claims, the Campbells respectfully request this Court exercise its supplemental jurisdiction over the entirety of Plaintiffs' case."  (*Id.* at 2.)  Plaintiffs did not respond to the Motion for Reconsideration.

The Court declines to exercise supplemental jurisdiction because the only remaining claim Plaintiffs may pursue is Count Twenty-Two, the official-capacity claim against the County related to the failure to investigate child abuse, and Plaintiffs are only given leave to amend Counts Twenty and Twenty-One.  Therefore, the state-law claims would still substantially predominate over the federal claims.

## VI. LEAVE TO AMEND

Plaintiffs have requested leave to file a Third Amended Complaint to clarify Monica Campbell called for backup rather than "the police."  (Doc. 76 n.1.)  The Court finds Plaintiffs' request as to Monica Campbell futile.

"Rule 15 advises the court that 'leave shall be freely given when justice so requires,'" and the Ninth Circuit has emphasized that "[t]his policy is 'to be applied with extreme liberality.'"  *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir.2001)).  In deciding whether justice requires leave to amend, courts consider "the

presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) (citing *Foman v. Davis*, 371 U.S. 178, 182, (1962)). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Cap.*, 316 F.3d at 1052 (emphasis omitted).

As noted above, Plaintiffs' FAC originally had four federal claims. Some of these claims were dismissed with leave to refile based on the deficiencies noted in the Court's prior ruling. Rather than correct the deficiencies in the FAC, Plaintiffs flooded the SAC with twenty-three federal claims, making some of the same pleading errors the Court noted in the FAC. Plaintiffs appear to hide behind very disturbing allegations to avoid complying with Rule 8. Instead, Plaintiffs toss up disturbing allegations, repeat them multiple times in an unorderly fashion, and hope these allegations will simply move this Court to let the deficient claims continue. This, the Court will not do. While the Court is deeply troubled by the factual allegations towards Defendants, it is the attorneys' responsibility to ensure the pleadings comply with Rule 8 and "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr*, 652 F.3d at 1216.

In the interests of justice, the Court will grant Plaintiffs leave to amend the complaint one *final* time but only as to Counts Twenty and Twenty-One. Plaintiffs may only attempt to clarify what specific behaviors they are alleging for the individual-capacity claims against Dannels and Tartaglia and what authority they have to establish  qualified immunity should not apply. Plaintiffs can also allege punitive damages against these two individuals in their individual capacity if they choose to within Counts Twenty and Twenty-One.[9] Plaintiffs may not amend any other claims in the SAC because Plaintiffs

---

[9] Punitive damages can be recoverable against officials sued in their individual capacities if "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).

have repeatedly failed to cure deficiencies and the Court finds leave to amend would be futile.  If Plaintiffs files a Third Amended Complaint, they must provide a copy of the changes indicating in what respect it differs from the pleading which it amends. *See* LRCiv 15.1(a).  Plaintiff must eliminate any count that has been dismissed with prejudice, renumber the counts, and may not "repeat and incorporate by reference the allegations contained in" other portions of the complaint like it did in prior pleadings.

**IT IS ORDERED:**

(1) The Campbell Defendants' Motion to Dismiss (Doc. 64) is **GRANTED.**  Counts One through Eighteen are dismissed with prejudice and Monica Campbell and Brian Campbell are terminated from this action.

(2) The County Defendants' Motion to Dismiss (Doc. 60) is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiffs' failure-to-train theory in Count Twenty-Two is dismissed with prejudice because leave to amend would be futile.  Counts Twenty and Twenty-One are dismissed without prejudice.

(3) The Campbell Defendants' Motion for Reconsideration (Doc. 77) is **DENIED**.

(4) Plaintiffs are granted leave to amend their individual-capacity claims against Dannels and Tartaglia and shall file their Third Amended Complaint on or before March 13, 2023.

(5) If Plaintiff fails to timely comply with every provision of this Order, the Court may dismiss this action without further notice.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260–61 (a district court may dismiss an action for failure to comply with any order of the Court).

Dated this 9th day of February, 2023.

Honorable Scott H. Rash
United States District Judge